## PRYOR v. PRYOR.

### Opinion delivered November 30, 1908.

1. DIVORCE AND ALIMONY—WIFE'S MISCONDUCT.—Equity has power to allow alimony to a wife against whom a decree for divorce is granted on account of her misconduct. (Page 307.)

2. SAME—ALTERATION OF ALLOWANCE OF ALIMONY.—Under Kirby's Digest, § 2683, equity has power to alter an allowance of alimony at any time. (Page 308.)

3. SAME—ALTERATION OF ALLOWANCE BASED ON AGREEMENT.—The fact that an allowance of alimony is based upon an agreement entered into between the parties does not prevent the court from subsequently altering the allowance, so far as it depends upon the decree of the court. (Page 308.)

4. HUSBAND AND WIFE—SEPARATION—CONTRACT.—Where a separation between husband and wife has already taken place or is about to take place, they may contract with each other for the payment by him of a sum or sums of money for her support. (Page 308.)

5. SAME—CONTRACT OF SEPARATION—EFFECT OF DIVORCE.—A contract entered into by husband and wife after or in contemplation of separation whereby he agrees to pay a sum or sums for her support will not be annulled by a subsequent decree of divorce. (Page 308.)

6. SAME—VALIDITY OF CONTRACT OF SEPARATION.—A contract between husband and wife, entered into in contemplation of an immediate divorce, whereby he agrees to pay her certain sums of money at stated intervals during her life, is valid and enforceable. (Page 309.)

7. ALIMONY—STIPULATED ALLOWANCE—REDUCTION.—Where husband and wife, in contemplation of immediate divorce, entered into a contract whereby he agreed to pay her certain sums of money at stated times, and they voluntarily caused this contract to be made part of the decree for divorce, the decree cannot subsequently be modified in so far as it is based on the contract, for a modification of the decree would be a modification of the contract itself; but, should the court find the allowance excessive, it may decline to permit its extraordinary process to be used to collect more than a just and reasonable allowance. (Page 309.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Vaughan & Vaughan,* for appellant.

1. The provisions of the decree sought to be modified are classed in law as *alimony,* and can not be anything else. It is not a *debt;* nor can it be reached by creditors, etc. 44 Iowa, 567; 129 N. Y. 566; 44 Wis. 354; 184 Ill. 375; 45 *Id.* 167; 64 Vt.

302, 495; 99 S. W. 830; Kirby's Digest, § 2682; 184 Ill. 375; 181 U. S. 183.

2. The power of a court of equity to alter or modify the terms of a decree relating to *alimony* is well settled. Kirby's Digest, § § 2861-3; 2 Bish. Mar. Div. & Sep., § § 872, 875; 1 Cur. Law 74; 9 *Id.* 95; 7 *Id.* 112, n. 94, 1189 (sec. 6), 1190; 14 Cyc. 784 c. note 95; 38 Ark. 119 (127); 51 S. W. 819; 5 Paige, Ch. 509; 4 *Id.* 516.

3. The facts in this case justify a modification of the decree. Kirby's Digest, § 2683; 73 Ark. 470-2; 2 Bish. Mar. Div. & Sep. § 875; 77 Ill. 346; 75 Wis. 342; 37 *Id.* 219; 38 Ark. 119; 51 S. W. 818; 42 Ark. 495; 40 L. R. A. 585; 57 Ark. 229.

*Ratcliffe, Fletcher & Ratcliffe,* for appellee.

Courts favor agreements and settlements of this kind, and always approve and sustain them unless greatly unjust and inequitable, and when the court passes upon them and approves them they are *final.* 28 Oh. St. 596; 74 Mo. 26; 49 N. H. 69; 25 N. J. Eq. 548. Courts have no power to grant relief in such cases. 60 Ill. 241; 125 *Id.* 608; 77 Me. 377; 25 Ind. 458; 3 Paige, 483; 64 Me. 484; 108 N. W. 8; 64 Oh. St. 369; 40 Ore. 477; 52 Kans. 724; 38 Vt. 248; 80 S. W. 1187; 18 Ark. 320; 38 *Id.* 119; 59 *Id.* 441.

McCULLOCH, J. In the year 1906, appellant, James F. Pryor, a resident of Pulaski County, Arkansas, instituted in the chancery court of that county a suit against his wife, appellee Laura E. Pryor, for divorce on the ground of willful desertion. It appears that they had been living separate and apart from each other for several years, appellee having resided in Indianapolis, Indiana, since she deserted her husband.

On April 21, 1906, during the pendency of the suit for divorce, they entered into the following agreement, which was reduced to writing and signed by both parties:

"This agreement between James F. Pryor and Laura E. Pryor, his wife, witnesseth:

"That for the purpose of mutually settling the property rights between the parties hereto as involved in the case of said J. F. Pryor *v.* Laura E. Pryor, in the Pulaski Chancery Court, wherein the said James F. Pryor is seeking a divorce from Laura E. Pryor, it is hereby agreed:

"First. That the said James F. Pryor shall execute to the said Laura E. Pryor a warranty deed to the property now occupied by her in the city of Indianapolis, State of Indiana, said property to be conveyed in fee to her.

"Second. That the said James F. Pryor shall pay the dues and expense charges upon one thousand dollars of the stock of the Argenta Building & Loan Association, now standing in the name of the said Laura E. Pryor, until the said stock is fully matured in accordance with the charter and by-laws of the said building and loan association, at which time the full amount of said stock shall be drawn by the said Laura E. Pryor from the said building and loan association.

"Third. That the said James F. Pryor shall pay the said Laura E. Pryor the sum of five hundred dollars ($500.00) in cash; that he will also pay the fees of Ratcliffe & Fletcher to the amount of one hundred dollars ($100) and the fees of J. H. Harper to the amount of fifty dollars ($50), as the attorneys of said Laura E. Pryor in said matter.

"Fourth. That the said James F. Pryor shall also pay the said Laura E. Pryor the sum of sixty dollars ($60) per month, on the first day of each and every month after this date, so long as she may live, unless she shall again marry, in which event the payment of the said sixty dollars ($60) per month shall cease; but nothing except the remarriage of the said Laura E. Pryor shall excuse or relieve the said James F. Pryor from the payment of the said sixty dollars ($60) per month; and in case of his death prior to the death of said Laura E. Pryor the said sixty dollars ($60) per month shall remain and continue an obligation against his estate and a lien upon the property hereinafter mentioned, towit: lots one (1), two (2), and three (3), and fractional lots ten (10), eleven (11), and twelve (12), in block forty-one (41), in the city of Argenta, Pulaski County, Arkansas.

"Fifth. That the said James F. Pryor will pay towards the support of the three children of the said James F. and Laura E. Pryor the sum of fifteen dollars ($15) per month, each, until they shall respectively arrive at the age of twenty-one (21) years. If said children, or either of them, shall be living with the said Laura E. Pryor, the amount for the support of such child or

children as may be living· with her shall be paid to her on the
first day of each and every month.

· "Sixth. That, in order to secure the faithful and prompt
performance of the obligations herein contained on the part of
the said James F. Pryor, towit, the payment of the said build-
ing and loan association dues and expenses, the payment of the
said sum of sixty dollars ($60) per month to the said Laura E.
Pryor, and the payment of the said sums of fifteen dollars ($15)
per month for the benefit of each of the children aforesaid, the
said James F. Pryor shall execute to the said Laura E. Pryor a
mortgage upon the Argenta property as aforesaid; and it shall
also be specified in any decree of divorce that may be rendered
in the cause aforesaid that the performance of the agreements
of the said James F. Pryor, as aforesaid, shall be a charge and a
lien upon the property aforesaid, and that on failure to pay said
amount, or either thereof, an execution may issue as at law
against the said James F. Pryor, and may be enforced against
the property aforesaid or any other property of the said James
F. Pryor, and the lien of said mortgage and of said decree shall
remain upon the property as aforesaid until the agreements as
aforesaid shall be fully complied with in accordance with the
terms as aforesaid, such execution to issue at the end of twenty
(20) days thereafter from any default as may be directed by the
said Laura E. Pryor.

"Seventh. That the said James F.·Pryor shall pay all the
costs in the case aforesaid, and shall pay the costs of recording
the mortgage aforesaid."

On April 23, 1906, a decree was entered by the Pulaski
Chancery Court granting a divorce to appellant from his wife
and awarding the custody of the three children to the wife. The
decree recites the execution of the aforesaid agreement, copying
it in full, and proceeds as follows:

"It is considered and ordered that the said agreement be
and is hereby made a part of the decree of this court in this case.
That said Laura E. Pryor have and recover of and from the said
James F. Pryor the several amounts mentioned in accordance
with the terms thereof. That, for the purpose of securing the
full and complete performance of said agreement, the same is
hereby declared a lien upon the property mentioned therein prior

to all other liens or claims, and, in default of payment of said amounts or either thereof for twenty days at any one time, then execution shall issue as at law for the amount or amounts that may be due, which may be enforced against said property, or any part thereof, or any other property which may belong to the said James F. Pryor.

"It is further ordered that said James F. Pryor promptly pay all taxes and assessments that may be levied upon or assessed against said property as the same may become due in accordance with the laws of the State of Arkansas, and in case of failure to do so execution may issue therefor, as hereinbefore provided in case of failure to comply with other terms of said agrement."

Pursuant to said agreement and the decree of court, appellant on April 24, 1906, executed to appellee a mortgage on the Argenta property to secure payment of the amounts named in the agreement. He paid the dues on the building and loan association stock until it was matured and the face value, $1,000, was paid over to appellee; and he paid to appellee the sum allowed for support for herself and sons up to August, 1907, and thereafter paid her only the sum of $65 per month.

He then filed his petition in the Pulaski Chancery Court, praying for an alteration of the allowance to appellee by reducing it to $50 per month for herself, alleging that his property in Argenta, which was all he owned, was unproductive, and that he was earning $125 per month in his work as railroad conductor, and was financially unable to continue the payment of $105 per month to his wife and children. He further alleged that the two eldest boys, then seventeen and twenty years old respectively, were earning reasonably good salaries sufficient for their living expenses, and that the youngest boy belonged to the United States Navy.

Appellee appeared by her solicitors, and resisted the alteration of the decree, and asked that the court order execution for the unpaid amount due in accordance with the terms of the agreement and decree.

The court denied the prayer of the petition on the ground that the original decree fixing the amount of alimony and settling the property rights of the parties by their consent and agreement in writing was "a complete and final settlement of all matters as

to said divorce, and binding upon the parties, and this court has no power to alter or amend the same for any of the causes in said petition." And the court awarded execution against appellant for the sum of $370 found to be due and unpaid under the provisions of the decree.

The first question presented is whether or not the chancery court had jurisdiction to decree an allowance of alimony to a guilty wife against whom a decree for divorce was granted, for, if the court could not award such an allowance, the decree itself was void and any contract between the parties to accomplish the same result was void for want of consideration. The agreement purports to relate to a settlement of property rights between the parties, but the court and the parties have manifestly treated the provision now under consideration as one for continuing alimony.

"According to ecclesiastical practice," says Mr. Nelson, "the guilty wife received no alimony, although there may have been some mitigating circumstances in her favor, and she might have brought a considerable dowry to her husband. Her offense relieved her husband from all duty of support. But the severity of this rule soon became manifest, and it was customary to make some provision for the wife when a divorce was granted by parliament to the husband. The divorce court now has discretionary power to grant her alimony, but will ordinarily refuse to do so." 2 Nelson on Divorce & Separation, § 907. The same author says in another place that while courts have power to allow alimony to a guilty wife it is error to do so when there are no mitigating circumstances in her favor.

A statute of this State provides that "when a decree (for divorce) shall be entered, the court shall make such order touching the alimony of the wife and care of the children, if there be any, as from the circumstances of the parties and the nature of the case shall be reasonable." Kirby's Digest, § 2681. Similar statutes in other States have been construed to have enlarged the powers of courts in divorce cases so as to empower them to allow alimony in any case, even to a guilty wife. *Spitler* v. *Spitler,* 108 Ill. 120; *Luthe* v. *Luthe,* 12 Colo. 421.

So, whether dependent upon enlarged powers conferred by the statute or not, we think it is settled that a court has the power

to allow alimony to a wife against whom a decree for divorce is granted on account of her misconduct. If error is committed by the court in making the allowance under the particular circumstances of the case, it must be corrected by appeal. The decree is not void.

The statutes of this State also contain the following provision:

"The court, upon application of either party, may make such alterations from time to time, as to the allowance of alimony and maintenance, as may be proper, and may order any reasonable sum to be paid for the support of the wife during the pending of her bill for divorce." Kirby's Digest, § 2683.

The court, therefore, has the undoubted power to alter an allowance of alimony at any time. *Kurtz* v. *Kurtz*, 38 Ark. 119.

Does the fact that the allowance is based on an agreement entered into betwen the parties hamper the power of the court to subsequently alter it? We think not, so far as the dependence of the allowance on the decree of the court is concerned. The statute gives the court the power to alter any of its decrees allowing alimony. The court is not, in the first instance, bound by the agreement of the parties concerning the amount of alimony to be allowed to the wife (2 Nelson on Divorce and Separation, section 915, *Calame* v. *Calame*, 25 N. J. Eq. 548); and, *a fortiori,* the agreement can not, in the face of the statute, hinder the court in altering its own decree of allowance. The decree is not entirely dependent upon the agreement, and therefore the power to subsequently alter can not be controlled by it. *Parsons* v. *Parsons* (Ky.), 80 S. W. 1187. The agreement. of these parties was not merely one as to the amount the court by its decree should fix as alimony, but it was manifestly intended to be an independent agreement, in contemplation of divorce, for the payment of alimony.

The question then arises whether or not such a contract is valid and, if it is, whether or not a court of equity can alter or modify it. We have already said that the court, when it comes to fix the amount of alimony to be allowed a wife, is not bound by the agreement of the parties. This is so because the court is moved to action by principles of justice and equity, and is not bound to follow the agreement of the parties against what ap-

pears to be the justice of the case. But the question of the power of the court to subsequently alter or modify an agreement relating to alimony is different from that of the power or duty of the court to follow the agreement in fixing the amount of alimony. The last-named power may exist without the former if the agreement is valid. The difference arises in the fact that one is a question of enforcement of an agreement relating to alimony and the other is a question of fixing by decree of court the amount of alimony to be allowed. Was the independent agreement for payment of alimony, made in contemplation of immediate divorce, valid as such? We say that it was. Husband and wife may, when separation has already taken place or is to immediately take place, contract with each other for the payment by him of a sum or sums of money for her support. *Bowers* v. *Hutchinson*, 67 Ark. 15; *Walker* v. *Walker*, 9 Wall. 741; *Randall* v. *Randall*, 37 Mich. 563; *Chapman* v. *Gray*, 8 Ga. 341; *Fox* v. *Davis*, 113 Mass. 255; *Hutton* v. *Hutton*, 3 Pa. St. 100; *Scott's Est.*, 147 Pa. St. 102.

A decree of divorce granted subsequently does not annul the contract. *Carpenter* v. *Osborn*, 102 N. Y. 552; *Galusha* v. *Galusha*, 116 N. Y. 635.

Why, then, should not they be permitted to contract for the payment of alimony in contemplation of an immediate divorce? It violates no rule of public policy, for the husband is liable for the wife's support during the continuance of the marriage relation, and it is within the power of the court to grant alimony payable after the relation is dissolved. The agreement was, in effect, contemporaneous with the decree granting the divorce, and we see no sound reason nor policy which forbids the making of such a contract. The contract relating to the amount to be paid for support of the wife survived the decree for divorce, and when it has been fairly entered into a court of equity should not alter or set it aside. *Carpenter* v. *Osborn, supra.*

The parties voluntarily caused this contract to be made a part of the court's decree, instead of waiting to have it enforced by an independent action after payments, according to its terms, should be refused. We are therefore of the opinion that the court can not alter or modify the decree, in so far as it is based on the contract of the parties, for a modification of the decree

would be no less than a modification of the contract itself.

We are not confronted with the question whether or not the court should, by the exercise of its extraordinary powers in inflicting punishment for contempt for failure to comply with the decree, lend its aid to the enforcement of an obligation which, by reason of changed financial condition of appellant, has become harsh and unjust.

No such remedy for the enforcement of the decree has been asked or granted. If it follows from what we have said with respect to the force and effect of the decree that, so far as concerns its enforcement by the extraordinary powers of the court, it depends, not upon the contract between the parties, but upon the equitable principles which underlie all decrees for alimony, and that it may be altered to the extent of adjusting such extraordinary remedies to the enforcement only of an allowance of alimony which is found from time to time to be just and equitable.

The issuance of execution of collection of monthly allowance fixed by the contract and by the order of the court, being only such a remedy as would be afforded as a matter of right for enforcement of the contract if an independent action should be brought upon it, is not an extraordinary remedy, and it was not inequitable for the court to grant it, instead of remitting appellee to an action on the contract to recover the amount in excess of what now appears to be a just and fair allowance of alimony. We must not be understood as holding that individuals have the right to contract for a certain remedy for the enforcement of contractual or other rights. It is the decree of the court which affords a foundation for issuance of process for its enforcement, and not the contract itself. That portion of the contract concerning the issuance of execution must be treated as surplusage.

Nothing in the chancellor's ruling conflicts with the views here expressed, and his decree is therefore affirmed.