SEATON *v.* SEATON.

4-9999                                              255 S. W. 2d 954

Opinion delivered March 16, 1953.

*Carl Langston* and *Wayne Foster,* for appellant.

*Otis Nixon,* for appellee.

GEORGE ROSE SMITH, J. In March, 1949, the appellant, Ala Merl Seaton, obtained a divorce in the Pulaski Chancery Court. The decree gave her the custody of the couple's two children and directed the appellee to pay her $100 a month, allocated as $30 for alimony and $35 each for the maintenance of the children. On March 28, 1950, the court entered an order relieving the appellee of further liability for alimony, and on April 13 of that year the court made a second order by which custody of the children was transferred to the appellee, who was also excused from making additional payments for their support. In her present complaint the appellant asserts that the two modifying orders were void and that she is entitled to judgment for alimony and maintenance for the period that has elapsed since the orders were entered. The chancellor refused the relief sought.

With respect to the order of March 28 Mrs. Seaton contends that the original award of alimony was based upon a property settlement made by the parties, that the court was thereafter without jurisdiction to modify the contract, and that therefore the order terminating the

appellee's liability for alimony is void on its face. In support of this argument the appellant relies on *McCue* v. *McCue*, 210 Ark. 826, 197 S. W. 2d 938, and *Bachus* v. *Bachus*, 216 Ark. 802, 227 S. W. 2d 439.

Those cases do not govern this one. Our decisions have recognized two different types of agreement for the payment of alimony. One is an independent contract, usually in writing, by which the husband, in contemplation of the divorce, binds himself to pay a fixed amount or fixed installments for his wife's support. Even though such a contract is approved by the chancellor and incorporated in the decree, as in the *Bachus* case, it does not merge into the court's award of alimony, and consequently, as we pointed out in that opinion, the wife has a remedy at law on the contract in the event the chancellor has reason not to enforce his decretal award by contempt proceedings.

The second type of agreement is that by which the parties, without making a contract that is meant to confer upon the wife an independent cause of action, merely agree upon "the amount the court by its decree should fix as alimony." *Pryor* v. *Pryor*, 88 Ark. 302, 114 S. W. 700, 129 Am. St. Rep. 102, which construed an agreement of the first type, and *Holmes* v. *Holmes*, 186 Ark. 251, 53 S. W. 2d 226, involving an agreement of the second type. See also 3 Ark. L. Rev. 98. A contract of the latter character is usually less formal than an independent property settlement; it may be intended merely as a means of dispensing with proof upon an issue not in dispute, and by its nature it merges in the divorce decree. In the *Holmes* case we held that the second type of contract does not prevent the court from later modifying its decree.

In the case at bar the agreement was oral. The decree recites that an agreement has been made that the husband shall pay $100 a month, allocated as we have stated, and "This agreement is approved by the court and is hereby made a consent decree." There is much similarity between this case and both the *Holmes* and

*McCue* cases, but we think that in principle the present agreement is governed by the *Holmes* opinion.

There is also another reason for holding that Mrs. Seaton is bound by the first modifying order. She appeared at that hearing, resisted her former husband's application for relief, and prayed an appeal, which was later abandoned. The order is therefore *res judicata* of Mrs. Seaton's right to enforce the original decree, and that is all she seeks to do here. The modifying order may have been error that could have been corrected by appeal, but it was not void.

The appellant attacks the second amending order upon the theory of unavoidable casualty, in that she had no notice of the hearing at which this order was entered. Ark. Stats. 1947, § 29-506. These are the facts: Seaton first applied for a discontinuance of alimony upon the ground that Mrs. Seaton was employed and for relief from maintenance of the older child upon the ground that the girl, contrary to his wishes, was being educated in a parochial school. The court granted the first prayer for relief on March 28 but reserved judgment on the second issue until the end of the school year. A few days later Mrs. Seaton moved with the children to California, where she has lived ever since. She says that before leaving Arkansas she consulted her then attorney, Kenneth Coffelt, who told her that there was no law to prevent her moving to California. Coffelt testified to the same effect, but added that he cautioned Mrs. Seaton that her departure would probably result in the court's refusing to enforce the maintenance payments.

Thereupon the appellee filed a petition asserting that Mrs. Seaton's conduct had deprived him of his right of visitation and that he should be given custody of the children and relieved from further maintenance payments as long as Mrs. Seaton kept the children out of the State. Notice of the proposed hearing upon this motion was served on Coffelt, but he did not attend the hearing and is not shown to have notified Mrs. Seaton that it was to take place. Mrs. Seaton now says that

service of notice upon her attorney was insufficient to make the order of April 13 binding upon her.

Inasmuch as the statute does not specify the notice to be given upon an application of this kind the rule is that the procedure chosen must be "reasonably calculated" to afford the opposite party an opportunity to be heard. *Schley* v. *Dodge,* 206 Ark. 1151, 178 S. W. 2d 851. In the circumstances of this case we think the method selected was sufficient. It is common practice to notify opposing counsel alone when an interlocutory matter is to be heard in a pending case. Even though Mrs. Seaton had left the State she had good reason to anticipate further proceedings in the case. She knew, for instance, that the matter of the child's attendance at a parochial school was still before the court. She knew also that her departure would prevent the children's father from having them in his home overnight every Wednesday, as the original decree had provided. She could expect that Seaton would complain of his loss of visitation privileges, and she had been warned by her lawyer that her decision to leave endangered enforcement of the maintenance decree. With all these facts before her it would certainly have been prudent for her to leave a forwarding address with her attorney.

Nor do we perceive that any other form of notice would have been better calculated to inform Mrs. Seaton of the proposed hearing. The alternative would have been the publication of a warning order and the appointment of an attorney *ad litem.* It is doubtful that such an attorney could successfully have communicated with Mrs. Seaton. The appellee testified that after Mrs. Seaton went to California he tried to obtain her address from her mother, but the information was withheld. Later on he went to California in an effort to find the children, but Mrs. Seaton's brother, who lived there, was evasive as to her whereabouts. Thus had an attorney *ad litem* sought to get in touch with Mrs. Seaton his best source of information would probably have been Coffelt himself. The procedure chosen reached the same result by a more direct route.

It is not inappropriate to add that we do not mean to foreclose forever the possibility of Mrs. Seaton's obtaining legal custody of her children, and an award of maintenance, in addition to the actual custody she now enjoys. The issue of custody is of course a continuing one that the court may reconsider from time to time. It is evident from this record that when Mrs. Seaton first left the State the appellee was anxious that the children be returned. He has since remarried, however, and there is some reason to infer that he is now well content to continue as the technical custodian of the children while at the same time being relieved of any obligation for their support. There must evidently be some balancing of the equities when a mother thinks it for the children's best interest that she seek employment in another State, while the father prefers that he be able to visit his daughters close at hand. These are matters that have not yet been fully developed in the course of this litigation, and our decision is without prejudice to Mrs. Seaton's right to present this issue to the chancellor.

Affirmed.

ED. F. McFADDIN, Justice (dissenting). My dissent goes to the question of the legality and sufficiency of service on Mrs. Seaton. The majority opinion says, *inter alia:*

"Notice of the proposed hearing upon this motion was served on Coffelt, but he did not attend the hearing and it is not shown to have notified Mrs. Seaton that it was to take place. Mrs. Seaton now says that service of notice upon her attorney was insufficient to make the order of April 13 binding upon her.

"Inasmuch as the statute does not specify the notice to be given upon an application of this kind the rule is that the procedure chosen must be 'reasonably calculated' to afford the opposite party an opportunity to be heard. *Schley* v. *Dodge,* 206 Ark. 1151, 178 S. W. 2d 851. In the circumstances of this case we think the method selected was sufficient. It is common practice to notify opposing counsel alone when an interlocutory matter is

to be heard in a pending case. Even though Mrs. Seaton had left the State she had good reason to anticipate further proceedings in the case.''

In the case cited in the above quotation—*Schley* v. *Dodge,* 206 Ark. 1151, 178 S. W. 2d 851—we specifically pointed out that the petitioner did receive actual notice of the hearing. But in the case at bar, the petitioner did not have actual notice. Therefore, I think the statutory method of publication of warning order and appointment of an attorney *ad litem,* or the statutory method of non-resident service,[1] should have been followed in the case at bar as a jurisdictional prerequisite to the rendering of a decision in a matter as serious as depriving a mother of her children and the money for their support. I submit that some statutory method of obtaining service—rather than mere ''common practice''—should have been pursued before such an order could have been legally made.

The majority opinion says—in the last paragraph—that Mrs. Seaton may still petition the Pulaski Chancery Court for a change of the challenged order. I think it would be far more just and proper to hold that the questioned order was void because of insufficient notice on Mrs. Seaton; and then Mr. Seaton would be required to be the moving party in any further proceedings. Why cast the burden on Mrs. Seaton, when she received no notice of a hearing on the order here involved?

---

[1] Section 27-354, Ark. Stats., concerns constructive service; and § 27-339, Ark. Stats., concerns non-resident service. Neither statute was followed in this case.