ADAMS *v.* ADAMS.

5-405                                          267 S. W. 2d 778

Opinion delivered May 10, 1954.

*Claude E. Love,* for appellant.

*Mahony & Yocum,* for appellee.

J. SEABORN HOLT, J.   September 9, 1953, appellant, Adams, filed the present suit seeking to set aside, or materially reduce, an award to appellee, Mrs. Adams, of $170.00 per month alimony, in a prior divorce decree, on the alleged ground of changed conditions since the granting of the divorce decree.   Trial resulted in a decree (October 9, 1953) denying to Adams the relief prayed and this appeal followed.

The parties were married January 10, 1946, separated July 8, 1950, and a decree of divorce was given Mrs. Adams April 5, 1951, awarding her care and custody of their little girl (then sixteen months old), $30.00 monthly for her support, and in addition alimony of $170.00 monthly, or a total of $200.00 per month.   Appellant filed a waiver and entry of appearance in the divorce suit.   This waiver signed only by appellant and prepared by him, contained the following provision: ''I further agree to pay to the plaintiff the sum of Two Hundred Dollars ($200.00) per month, the same to be Thirty Dollars ($30.00) a month for support of my minor child and One Hundred Seventy Dollars ($170.00) per month

for alimony for the plaintiff. Said amounts will be paid as long as conditions remain as they are; any change of her conditions in her being able to rehabilitate herself and go to work or any demotion in the armed services or discharge therefrom, said payments shall be reduced into such amount as agreed upon between us, or as the Court may decree. The court is to keep jurisdiction of this cause and make such changes as should be made when conditions change.''

As indicated, Mrs. Adams did not sign the waiver. She testified: ''Q. Now, at the time the decree was granted, you knew about this waiver, did you not? A. Yes, sir. Q. And you knew the provisions in the waiver about paying the $170.00 a month alimony until such time—A. When the waiver was signed it was Capt. Adams' idea. He signed the waiver. I didn't even see it. He set the terms up for the agreement. Q. Was that agreeable to you? A. Well, he threatened to cut all of it off if I didn't get the divorce. I had no choice.''

Adams has remarried and now has a child by his present wife.

Mrs. Adams secured temporary employment in 1950 and in January 1951 permanent employment with the Lion Oil Company at $44.00 per week. She had been drawing this salary for a period of about nine months prior to the divorce decree. Thereafter her salary has been increased to $60.00 per week. She was receiving $240.00 per month salary, $170.00 alimony and $30.00 for child support, or a total of $440.00 when the present suit was filed. There was evidence that Mrs. Adams' monthly expenses totaled approximately $470.00. She testified that more than half of her expenses was spent for the child: ''Out of the money that Mr. Adams gives me I pay $60 a month for rent and $60 a month for food, which consists of, I would say, breakfast and dinner at night. I am not there much at noon, maybe twice a week for lunch, sometimes three times. I pay $5.56 for a telephone, $13.80 for utilities. Water is approximately $3.11, gas $4.69, and electricity is about $6.00. It

varies in the summer and winter. Well, I pay, I would say easily $10 for a doctor bill per month for the baby and myself. That is averaging so much a year. $10 a month for drug bill, which includes cosmetics and necessities for a working girl. I spend about $8.00 a month for gasoline, which is for pleasure and transportation. The maid costs $5.00 a month for cleaning, which increases as a child grows. $2.00 a month or $24.00 a year for emergencies, such as automobile repair, odds and ends, repairing the refrigerator or washing machine. $2.28 per month for my baby's insurance, an endowment, $2.49 for mine on life. * * * I pay a maid $60.00 per month.''

Appellant, Adams, at the time the divorce decree was awarded to appellee held the rank of Captain in the U. S. Army Air Corp. Shortly thereafter, he was promoted in rank to that of Major with increased total pay amounting to $755.00 per month. After paying appellee $200.00 per month (alimony and child support) and his expenses (estimated at about $460.00 per month) he had a surplus of approximately $93.00.

Without attempting to detail all the testimony, after a careful review of it all, we have concluded that, while the alimony allowance appears to be somewhat liberal, the decree denying modification at this time is, in the circumstances, correct and should be affirmed. In other words, we find no such changed conditions that would warrant modification.

In a case of this nature, our statute § 34-1213, Ark. Stats. 1947, provides: ''Modification of allowance for alimony and maintenance.—The court, upon application of either party, may make such alterations from time to time, as to the allowance of alimony and maintenance, as may be proper, (and may order any reasonable sum to be paid for the support of the wife, during the pending of her bill for a divorce). See *McConnell* v. *McConnell*, 98 Ark. 193, 136 S. W. 931, 33 L. R. A., N. S. 1074.

We do not agree with appellant's contention that the above waiver is a binding agreement on appellee. In the first place, she never signed it and it is unilateral, in effect. Even if it could be said that appellee did make such an agreement with appellant on the amount to be fixed by the court as alimony, still under our decisions, the trial court, in the circumstances, would not be bound thereby.

In *Seaton* v. *Seaton*, 221 Ark. 778, 255 S. W. 2d 954, we said: "The second type of agreement is that by which the parties, without making a contract that is meant to confer upon the wife an independent cause of action, merely agree upon 'the amount the court by its decree should fix as alimony.' *Pryor* v. *Pryor*, 88 Ark. 302, 114 S. W. 700, 129 Am. St. Rep. 102, which construed an agreement of the first type, and *Holmes* v. *Holmes*, 186 Ark. 251, 53 S. W. 2d 226, involving an agreement of the second type. See also 3 Ark. L. Rev. 98. A contract of the latter character is usually less formal than an independent property settlement; it may be intended merely as a means of dispensing with proof upon an issue not in dispute, and by its nature it merges in the divorce decree. In the Holmes case we held that the second type of contract does not prevent the court from later modifying its decree."

In *Lively* v. *Lively*, 222 Ark. 501, 261 S. W. 2d 409, we said: "There is a second type of agreement in which the parties merely agree upon the amount the court should fix by its decree as alimony or support, without intending to confer on the wife an independent cause of action. This type agreement becomes merged in the decree and loses its contractual nature so that the court may modify the decree. *Holmes* v. *Holmes*, 186 Ark. 251, 53 S. W. 2d 226; *Wilson* v. *Wilson*, 186 Ark. 415, 53 S. W. 2d 990; *Seaton* v. *Seaton*, 221 Ark. 778, 255 S. W. 2d 954."

Taking into account the cost of living, which has substantially increased, since the alimony award was made to appellee, the necessary and reasonable expenses for the proper care and rearing of this little girl, with

the fact that a substantial part of these expenses for the child are being supplied and must be supplied by appellee out of her alimony allowance over and above the $30.00 support money, and further the ability of Adams to pay, the duty resting on him to support his child properly, all in all, although, as indicated, while it may appear that the alimony allowance was liberal, it also may be said from the testimony that the support award for the child was not liberal enough.

We conclude that the Chancellor's findings were not against the preponderance of the testimony, and accordingly, the decree is affirmed.