Karen BERCHER *v.* David G. BERCHER

CA 79-220                                    596 S.W. 2d 369

Court of Appeals of Arkansas
Opinion delivered March 19, 1980
Released for publication April 9, 1980

*Janet B. Dyer*, Western Arkansas Legal Services, for appellant.

*Wiggins, Christian & Garner*, for appellee.

GEORGE HOWARD, JR., Judge. Appellant was granted an absolute divorce from appellee on May 3, 1977. The decree incorporated a property settlement between the parties which provided that appellant shall have possession of the homeplace — the property was owned as an estate by the en-

tirety and was subject to a mortgage which appellant was required to assume — as long as she used the homeplace as a residence, or until the parties' minor child reached her eighteenth birthday; upon the occurrence of either event, the property was to be sold and the proceeds divided equally between the parties.

During 1977, appellant was laid off from her job and missed three house notes.

Appellant testified that appellee encouraged her to execute a quitclaim deed to him conveying her interest, in the homeplace, in return for appellee's agreement to make the payments current. Appellant stated that she felt this was necessary in order to avoid being "kicked out in the streets;" that she felt by executing the deed "this would guarantee that I would stay in the house;" that she wanted to check with her attorney before signing the document, but appellee said "I didn't have time for that;" that after she executed the deed, appellee tried to sell the house, but she advised all prospective purchasers that the property was not for sale. Appellant concedes that she was not making the house payments as directed by the trial court's decree because she had no income and appellee was not making his support payments as directed.

Appellant's response to interrogatories submitted by appellee stated that while appellant acknowledged executing a document, she does not know what kind of deed it was because she was "crying profusely at the time the deed was signed by her."

The trial court held, among other things, pursuant to appellee's request for an order requiring appellant to surrender possession of the homeplace:

"The parties' homeplace is herein ordered sold and after payment of the mortgage and costs of sale, the proceeds shall be divided as follows:

"(a) The husband shall first be reimbursed for his payments paid on the principal plus one-half (½)

of the amount husband paid on taxes, insurance and interest. The defendant husband shall maintain the payments on the house until it is sold.

"(b) The plaintiff wife shall receive credit on payments she has made on the principal and one-half (½) of the taxes, insurance and interest payments.

. . .

"The parties shall be permitted to have a private realtor attempt to sell the homeplace for a period of ninety (90) days and if not sold in said period, then either party may petition the Court . . . to sell this property.

. . .

". . . [A]ll remaining equity and proceeds derived from said sale shall be divided equally between plaintiff and defendant."

The difficulty we encounter at the outset is the failure of the trial court to make findings articulating the following critical questions that are central to a resolution of this controversy:

1. What was the agreement between the parties culminating in the execution of the quitclaim deed by appellant conveying her equity in the property to appellee?

2. Who was required to make the mortgage payments after appellee brought the account current?

3. What were appellant's possessory rights to the homeplace after she executed the quitclaim deed to appellee?

4. If a sale of the property was contemplated by the parties, how were the net proceeds to be divided?

5.   Did the trial court have power to order a sale of the homeplace?

6.   If the property rights of the parties vested under the divorce decree, could the trial court modify these rights?

7.   The decree did not vacate the quitclaim deed, nor did the pleadings seek cancellation of the instrument. Why did the court fail to recognize or give force and effect to the quitclaim deed?

8.   Did appellant convey her equity in the homeplace in consideration of appellee assuming the entire balance remaining under the mortgage?

While a chancery court proceeding is heard *de novo* on appellate review, appellate courts will affirm unless the holding of the trial court is against a preponderance of the evidence. *Moore* v. *Smith*, 255 Ark. 249, 499 S.W. 2d 634 (1973). However, when the record is not fully developed and the appellate court can not determine what the equities are, the appellate court will remand the proceeding to the trial court instead of proceeding to consider the merits and rendering a decree as should have been entered below. *Lenderman* v. *Lenderman,* 266 Ark. 1000, 588 S.W. 2d 707 (Ark. App. 1979); *Arkansas National Bank* v. *Cleburne County Bank,* 258 Ark. 329, 525 S.W. 2d 82 (1975).

Accordingly, we reverse and remand to the trial court for a hearing consistent with this opinion.