Robert A. McGAUGH *v.* Ann McGAUGH

CA 86-4                                          721 S.W.2d 677

Court of Appeals of Arkansas
Division I
Opinion delivered December 23, 1986
[Rehearing denied January 21, 1987.]

349

*Wallace, Hamner & Arnold*, for appellant.

*Barron & Coleman, P.A.*, by: *Randy Coleman*, for appellee.

JAMES R. COOPER, Judge. This is an appeal from a decision of the Chancery Court of Pulaski County holding that the property settlement agreement incorporated into the parties' divorce decree was an independent contract and, therefore, unmodifiable. The appellant contends that the chancellor erred in finding the agreement to be unmodifiable and in refusing to consider evidence of the parties' understanding as to when alimony was to cease under the contract.

The parties were divorced on December 13, 1977. The divorce decree set forth, verbatim, the original of the property settlement agreement (Agreement) entered into November 15, 1977, and adopted and incorporated the entire agreement. The Agreement provides in pertinent part:

WHEREAS, it is the desire and intention of the

parties that their relations, with respect to property and financial matters, *be finally fixed* by this agreement in order to settle and determine *in all respects and for all purposes* their respective present and future property rights, claims and demands *in such a manner that any action* with respect to the rights and obligations, past, present or future, of either party with respect to each other, *be finally and conclusively settled and determined* by this agreement . . . .

. . . .

NOW, THEREFORE, in consideration of the premises and undertakings herein contained, and for other good and valuable consideration, the parties agree:

. . . .

9. Husband shall pay to wife the sum of $150.00 per month payable on the first of each and every month beginning December 1, 1977, as support for said wife.

. . . .

12. *The terms and provisions of this agreement shall constitute a stipulation of the divorce action* instituted by the wife against the husband in the Chancery Court of Pulaski County, Arkansas, cause number 76-3660.

(Emphasis added.) The agreement also sets forth detailed provisions regarding property division and child custody, visitation, and support.

It is well settled law that there are two types of property agreements regarding the payment of alimony. *Seaton* v. *Seaton*, 221 Ark. 778, 255 S.W.2d 954 (1953); *Linehan* v. *Linehan*, 8 Ark. App. 177, 649 S.W.2d 837 (1983). The court in *Seaton* distinguished between these two different types of agreements:

One is an independent contract, usually in writing, by which the husband, in contemplation of the divorce, binds himself to pay a fixed amount or fixed installments for his wife's support. Even though such a contract is approved by the chancellor and incorporated in the decree, as in the *Bachus* case, it does not merge into the court's award of

alimony, and consequently, as we pointed out in that opinion, the wife has a remedy at law on the contract in the event the chancellor has reason not to enforce his decretal award by contempt proceedings.

The second type of agreement is that by which the parties, without making a contract that is meant to confer upon the wife an independent cause of action, merely agree upon "the amount the court by its decree should fix as alimony." *Pryor* v. *Pryor*, 88 Ark. 302, 114 S.W. 700, 129 Am. St. Rep. 102, which construed an agreement of the first type, and *Holmes* v. *Holmes*, 186 Ark. 251, 53 S.W.2d 226, involving an agreement of the second type. See also 3 Ark. L. Rev. 98. A contract of the latter character is usually less formal than an independent property settlement; it may be intended merely as a means of dispensing with proof upon an issue not in dispute, and by its nature it merges in the divorce decree. In the *Holmes* case we held that the second type of contract does not prevent the court from later modifying its decree.

221 Ark. at 780.

The appellant contends that the agreement is a modifiable one, which was intended merely as a means of dispensing with proof on issues not in dispute and, therefore, merged into the divorce decree. As support for this contention, he points to paragraph twelve (12) of the Agreement, *supra*, which provides that the agreement shall be a stipulation in the divorce action. The appellee counters that the agreement is an independent contract and is nonmodifiable, relying on language in the Agreement which provides that the agreement is finally fixed and determined in all respects and purposes and conclusively settled by the Agreement. We agree with the appellee, and find that *Linehan*, 8 Ark. App. 177, is controlling.

In *Linehan*, the parties entered into a stipulated agreement, orally dictated into the record in open court, providing that the agreement would be incorporated into the decree by reference. 8 Ark. App. at 179. Like the Agreement here, the stipulation was detailed, covering all aspects of the controversy from property division to child visitation, and was incorporated

into the decree without variance. We recognized that there were two types of stipulations: procedural, aimed at facilitating the lawsuit by simplifying proof, and contractual, dealing with the subject of the lawsuit, such as the rights or property at issue. 8 Ark. App. at 180-81. We pointed out that a contractual stipulation can only be withdrawn on grounds for nullifying a contract and stated:

> We are not saying that a stipulation in every instance will have the full force and effect of a binding agreement or a contractual right, but when, as here, all the rights and liabilities of the parties are covered in such a total and complete agreement, then it will not be modifiable.

*Id.* The Agreement in the case at bar, like the agreement in *Linehan*, is a comprehensive and complete agreement, setting forth everything from child custody to proper visitation. Moreover, it is a written agreement, signed prior to entry of the decree, and by its language, it attempts to finally settle all of the parties' differences. We affirm the chancellor's decision on this point.

The appellant next contends that the chancellor erred in refusing to consider evidence as to the parties' intent as to when alimony should cease. The chancellor found in her order that "what the parties may have intended is not relevant, as the contract must be gathered from the four corners of the instrument, where there is no ambiguity and the instrument is a complete integration of the parties [sic] agreement, as is the case here."

Paragraph nine (9) of the Agreement merely states that the husband is to pay the wife $150.00 a month as support; it is silent as to when, if ever, this obligation ceases. Alimony has long been defined in Arkansas as

> a continuous allotment of sums, payable at regular intervals, for [the wife's] support from year to year, and continues only during the joint lives of the parties, or, in case of divorce from the bonds of matrimony, until the wife marries again. . . .

*Birnstill* v. *Birnstill*, 218 Ark. 130, 131, 234 S.W.2d 757, 758 (1950) (quoting *Brown* v. *Brown*, 38 Ark. 324 (1881)); *accord, Boyles* v. *Boyles*, 268 Ark. 120, 594 S.W.2d 17 (1980). Where no

definite time is fixed, a decree for alimony will, by its nature, cease with the death of either party, or, upon the remarriage of the wife, the husband may obtain relief by making proper application to the court. *Casteel* v. *Casteel*, 38 Ark. 477 (1882). The former causes cessation of alimony automatically. *See, Snyder* v. *Snyder*, 13 Ark. App. 311, 683 S.W.2d 630 (1985). However, remarriage does not automatically terminate the right to alimony, as there may be circumstances under which the court may be justified in continuing alimony payments. *Frawley* v. *Smith*, 3 Ark. App. 74, 622 S.W.2d 194 (1981). Normally, however, remarriage of the receiving spouse is, in and of itself, a sufficient reason for the termination of alimony. *Id.; accord, Beasley* v. *Beasley*, 247 Ark. 338, 445 S.W.2d 500 (1969); *Wear* v. *Boydstone*, 230 Ark. 580, 324 S.W.2d 337 (1959). Because there are two circumstances in which alimony normally ceases, one automatic and the other not, we find the provision for alimony in this case to be ambiguous as to its termination date. Therefore, we hold that the chancellor erred in refusing to consider evidence of the parties' intent as to when alimony should terminate.

In this case, the chancellor allowed evidence of intent into the record, although she specifically said she did not consider it. The evidence as to intent presented in the record is in hopeless conflict. In such a case, determining the credibility of the witnesses is a critical issue, which must be resolved before the court can reach a decision on the issue of intent. *See, Reed* v. *Radebaugh*, 8 Ark. App. 78, 648 S.W.2d 816 (1983). The chancellor is in a superior position to determine the credibility of the witnesses, as she has the opportunity to observe their demeanor when testifying, while we are restricted to the written record. *See, Bone* v. *Bone*, 12 Ark. App. 163, 671 S.W.2d 217 (1984). Although we do not normally remand cases we have before us on *de novo* review, instead entering the decree that the chancellor should have entered, we do so only when the record is so fully developed that we can plainly see where the equities lie. *McDonald* v. *McDonald*, 19 Ark. App. 75, 716 S.W.2d 788 (1986); *Bercher* v. *Bercher*, 268 Ark. 877, 596 S.W.2d 369 (Ark. App. 1980). Under the circumstances of this case, we find it to be in the interests of justice to reverse and remand, directing the chancellor to consider evidence showing when the parties intended for alimony to terminate.

Reversed and remanded.

CLONINGER and MAYFIELD, JJ., agree.