Berta KUNZ *v.* Louie JARNIGAN

CA 88-24 756 S.W.2d 913

Court of Appeals of Arkansas
Division I
Opinion delivered September 14, 1988

*Raymond C. Smith, P.A.,* by: *Raymond C. Smith,* for appellant.

*Larry D. Douglas, P.A.,* by: *Larry D. Douglas,* for appellee.

DONALD L. CORBIN, Chief Judge. This appeal results from the chancellor's refusal to modify appellant's alimony award and determine the parties' intent regarding the termination of alimony. We affirm the chancellor on all points.

The parties were divorced on May 13, 1986. On the day of the hearing, the parties' attorneys dictated a stipulation into the record of the court, whereby appellee, Louis Jarnigan, defendant at trial, agreed to withdraw his answer and counterclaim to appellant's complaint for divorce and the parties agreed to a division of their marital property. In regard to appellee's military retirement pay, the parties' stipulation provided:

> In regards to the alimony, [appellee] is a military retiree and receiving military retirement benefits. He agrees to pay, as alimony, to [appellant] one half of that retirement check. . . . [I]n relation to this settlement, then the retirement check will be split fifty-fifty, fifty percent of it going as alimony . . . .

[There was then a discussion off the record and the stipulation continued:]

> In preparing this decree and property settlement, we will

have to refer to Federal Regulations in regards to the terminology but it is our intent that this be alimony, at this time, and we will have to get the proper terminology and we will have to plug in however the military retirement people in Denver, Colorado, designate the payment to be made. And I take it, both parties will agree whether the check comes in as one or split between the two . . . .

At the conclusion of this agreement, appellee's attorney asked appellant if the stipulation was her agreement as stipulated and she affirmed that it was. The terms of the oral stipulation agreement were incorporated into the divorce decree and it provided in part as follows:

4. That a property settlement agreement which is hereby ratified by the Court is as follows:

(i) [Appellee] is presently a recipient of a military retirement benefit and the [appellee] hereby agrees to pay as alimony 50% of the net military retirement benefits to [appellant], that he agrees to complete all paperwork to that designation as alimony . . . .

On February 25, 1987, appellant filed a petition to modify the divorce decree alleging that the parties intended that she receive one-half of appellee's military retirement benefits until appellee's death and that appellee had mistakenly labeled her half of the benefits as alimony. A hearing was held on appellant's motion, at the conclusion of which, the chancellor found the divorce decree reflected the parties' intent that appellant receive fifty percent of the net retirement check as alimony, that there was no misunderstanding on the part of appellant, and that there was no basis for modifying the decree. The court further stated it had grave doubts as to whether it could remake a property settlement agreement between the parties absent a showing of fraud or overreaching. The court declined to make any finding on whether appellant's alimony would terminate if she remarried, stating that because the event is uncertain, there is no question before the court upon which it can make a finding.

Appellant first argues the chancellor erred in refusing to modify the agreement to reflect that she receive one-half of appellee's gross retirement pay as her share of marital property.

She contends the parties' stipulation was not an independent agreement and was modifiable by the chancellor, and the case should be remanded to the chancellor to establish the true intentions of the parties.

In *Linehan* v. *Linehan*, 8 Ark. App. 177, 649 S.W.2d 837 (1983), we held that when a stipulation dictated into open court covers all the rights and liabilities of the parties in a total and complete agreement, it will have the full force and effect of a binding agreement, and it will not be modifiable. The stipulation in *Linehan* is similar to the stipulation in the case at bar. In *Linehan*, on the day set for the divorce hearing, the parties, through their respective attorneys, negotiated a stipulated agreement. The appellant's counsel dictated it into the record of open court, and the stipulation covered every facet of the controversy from a division of property down to visitation with the children. The divorce decree incorporated the terms of the stipulated agreement with no variances. On appeal, the appellant contended the stipulated agreement could not qualify as an independent contract because it was not in writing nor signed by the parties. This court, rejecting the appellant's contention, stated:

> Oral stipulations made in open court which are taken down by the reporter and acted upon by the parties and court are valid and binding. Such stipulations are in the nature of a contract. . . . Contractual stipulations affect the subject matter of the lawsuit. They deal with the rights or property at issue and are styled stipulations only because they occur in connection with the litigation. *Lawrence* v. *Lawrence*, 217 N.W.2d 792 (N.D. 1974).
>
> . . . A contractual stipulation can only be withdrawn on grounds for nullifying a contract, i.e., fraud, misrepresentation.

*Linehan*, 8 Ark. App. at 180-81, 649 S.W.2d at 839.

In the case at bar, appellee's attorney dictated the stipulation into the record of the court. The stipulation withdrew appellee's contest of the divorce and provided in detail for a division of the parties' property. At the conclusion of the stipulation, both parties were asked if the stipulation reflected their agreement and they affirmed that it did. The stipulation was

a complete settlement of the parties' marital rights and was not modifiable by the court.

Furthermore, even if the stipulation was subject to modification, we do not find the chancellor erred in failing to do so. Appellant, at the modification hearing, testified that it was her understanding that she would receive one-half of appellee's military retirement benefits as property and not alimony, but that she did not care what it was called as long as she received half of the benefits. She stated she agreed to the stipulated property agreement, but she did not understand it. She stated that when she received the proposed decree with the alimony wording in it she voiced her opposition to her attorney but did not file an objection. Appellant's attorney who represented her at the time the stipulation was dictated but was relieved as her attorney prior to the decree being entered testified that, at the time of the stipulation, he could not recall that it was the parties' intention that her share of the retirement benefits be considered alimony. Appellee testified he specifically requested his attorney to use the term alimony in the stipulation, because it was not his intention to pay permanent alimony but for it to terminate upon appellant's remarriage.

At the conclusion of the hearing, the chancellor stated he was wholly persuaded appellant was not misled nor did she misunderstand, and it was entirely clear from the beginning that the parties intended and expressed that appellee's military retirement benefits should be received by appellant as alimony. He also found that throughout the divorce appellant was represented by or consulted with four separate attorneys and it could not be said that appellant did not have the full opportunity to be informed about the matter.

■ We review chancery cases *de novo* on appeal and the chancellor's findings of fact will not be reversed unless they are clearly against the preponderance of the evidence; we give due regard to the chancellor's superior opportunity to assess the credibility of the witnesses. *Kesterson* v. *Kesterson*, 21 Ark. App. 287, 731 S.W.2d 786 (1987).

■ Appellant further argues that the chancellor erred in not finding her alimony should be based upon fifty percent of appellee's *gross* retirement pay. The chancellor noted that the

wording of the decree, "[appellee] hereby agrees to pay as alimony 50% of the net military benefits to the [appellant]," differed from the wording of the stipulation, "[appellee] agrees to pay, as alimony, to [appellant], one half of that retirement check." The chancellor concluded, however, there was no substantial difference between the decree and stipulation, because under both wordings the alimony would be based upon one-half of the money received by appellee after all the deductions had been subtracted. We agree with the chancellor's conclusion that, in terms of the dollar amount, the stipulation and decree are the same.

Appellant also contends that the exact amount of the deductions which appellee can elect to withhold from his check should be set to prevent appellee from receiving a windfall by electing to have a larger amount of his check withheld. The chancellor found the decree and stipulation both provided for appellant to receive one-half of appellee's *net* retirement benefit, i.e., one-half of appellee's retirement check as alimony. There is no provision in the stipulation or decree that appellee is not to have deductions withheld from his gross military retirement pay nor do they provide that appellee's pay is to be split and deductions withheld only from appellee's portion. While we agree with appellant that appellee could have a larger amount withheld from his check in order to reduce the alimony she receives, it is clear from the parties' actions that this is not their intent; and there is no evidence appellee has attempted to do so. We therefore find it unnecessary to interpret the parties' contract where there is no evidence of bad faith or breach on the part of appellee.

We also find no error in the chancellor's refusal to determine whether appellant's entitlement to alimony would terminate in the event she remarried. Normally, remarriage is a sufficient basis to terminate alimony. *McGaugh* v. *McGaugh*, 19 Ark. App. 348, 721 S.W.2d 677 (1986). However, remarriage of an ex-spouse does not automatically terminate the obligation as there are circumstances under which continued payment to the ex-spouse may be warranted. *Frawley* v. *Smith*, 3 Ark. App. 74, 622 S.W.2d 194 (1981). At the time of the hearing appellant had not remarried and the chancellor held the question was not properly before the court.

 The case of *McGaugh*, relied on by appellant, is distinguishable from the case at bar. There, this court reversed and remanded the case to the chancellor to consider evidence showing when the parties intended for the appellee's alimony to terminate. Although it is not apparent from reading *McGaugh*, the record filed in this court demonstrates that the appellee in *McGaugh* had remarried at the time the appellant sought a modification of the divorce decree. Here, appellant had not remarried when she sought a determination from the chancellor; therefore, the issue was premature and not properly before the court. To make a determination under this fact situation would have been tantamount to issuing an advisory opinion, which courts are prohibited from doing. *See Traveler's Indem. Co. v. Olive's Sporting Goods, Inc.*, 25 Ark. App. 81, 753 S.W.2d 284 (1988).

Affirmed.

CRACRAFT and JENNINGS, JJ., agree.