Catherine M. SHIPLEY (White) *v.* Grady SHIPLEY

91-78                                   807 S.W.2d 915

Supreme Court of Arkansas
Opinion delivered April 22, 1991

*Hardin, Jesson & Dawson*, by: *Robert T. Dawson* and *Gregory L. Crow*, for appellant.

*Bethell & Cromwell*, by: *Jan Rose Cromwell*, for appellee.

ROBERT H. DUDLEY, Justice. In 1978, Grady Shipley filed

suit for divorce against Catherine Shipley. She responded with a counterclaim for divorce against him. They agreed on a property division and agreed that the wife should have custody of the children, but reached an impasse on the amounts of alimony and child support. Both parties were represented by experienced trial attorneys. One attorney eventually suggested to the other that they "let the Judge decide" those amounts. The trial began on January 24, 1979.

Procedurally, the plaintiff husband dismissed his complaint, and the counter-complainant wife then proceeded with her case. First, she presented a witness to corroborate her residency. Next, she presented an accountant to testify about the amount of alimony and child support that she needed. The accountant was cross-examined. Then, the wife took the stand and gave detailed testimony about her needs. In short, she testified that she needed at least $30,000.00 per year. She was cross-examined. The chancellor asked her a number of questions. Those questions and answers cover three and one-half pages of the transcript. There was re-direct, re-cross, and there were more questions by the chancellor. Numerous exhibits were introduced. The husband's attorney thought the disputed issues finally might be ripe for settlement and asked for a short recess. The chancellor granted the recess. The attorneys went out into the hallway and, after a short while, agreed on a sum for alimony and child support. They returned to the courtroom and announced they had reached a settlement. In announcing the settlement, they called it a "property settlement agreement." The property part of the agreement covers three and one-half transcript pages and can best be summarized as two attorneys stating their argument with the court asking a lot of questions, but it was not all in the form of a full and final written property settlement agreement. After the property part of the agreement had been discussed, the husband's attorney stated, "We had agreed to pay $2,000 per month alimony-child support." The court asked, "How are you going to divide it?" The husband's attorney responded, "Fifteen hundred dollars alimony and five hundred dollars child support." The chancellor then awarded custody of the children to the wife, stated that alimony would be $1,500.00 per month, child support would be $500.00 per month, and approved the property settlement agreement.

A little over ten years later, on July 15, 1989, the ex-wife remarried. The ex-husband stopped paying alimony and filed a petition asking the court to terminate alimony. The chancellor ruled that alimony payments should cease. The ex-wife appeals. The Court of Appeals certified the case to us.

The sole issue is whether the agreement on the amount of alimony announced at the divorce hearing was an independent contract which could not be modified by the court, or whether it was an agreement upon an amount that the court should fix as alimony and which the court could modify.

Our case law is well settled that there are two types of agreements concerning the payment of alimony. *Seaton* v. *Seaton*, 221 Ark. 778, 255 S.W.2d 954 (1953). One type is an independent contract in contemplation of divorce by which one spouse binds himself or herself to pay a fixed amount for the other's support. Such an agreement normally will be a complete settlement of all property rights and will not be subject to modification by the court. This type of agreement does not merge into a decree of divorce, but is an independent contract, and the spouse entitled to receive alimony can enforce it either by the standard contempt action, or through a separate remedy at law. The other type of agreement is less formal than the independent property settlement agreement and is intended to be an amount agreed upon for the court to fix as alimony. By its nature it merges into the decree of divorce and does not confer an independent cause of action. *Seaton* v. *Seaton, supra.*

The independent property settlement will usually be in the form of a separate written agreement, *Seaton* v. *Seaton, supra,* but it may be in the form of a complete property settlement which is dictated into the record. *Kunz* v. *Jarnigan*, 25 Ark. App. 221, 756 S.W.2d 913 (1988). Obviously, if the parties intend for an agreement which is dictated into the record to constitute an independent agreement they should so state.

Here, the parties settled the case well after the trial had commenced. They advised the chancellor of the terms of their property settlement as well as the terms of their alimony and child support settlement. No formal agreement was dictated into the record. They did not state that they intended to create an independent contract for alimony, and the chancellor did not

treat it as an independent contract. In his finding at the divorce hearing the chancellor fixed the amount of alimony and child support separately from his approval of the property settlement. Over ten years later, the same chancellor heard the issue now on appeal and commented:

> [L]ooking back at my own notes from the date of the trial of this case, as well as the transcript, and all matters before the Court, it's the Court's considered opinion that the Plaintiff's Motion to Terminate Alimony should be granted. That it is only equitable and just to do so. The parties did not intend to do otherwise. Had they intended to do otherwise, with the lawyers they had they would have made that known and clear to the Court, which they did not. It's my recollection and my thinking from looking at all of this that really the Court fixed the alimony and support at the time, and it was my intention to do so, and that's exactly what I did, and that's the language that I used, and I had no intention of continuing it beyond the death of one of the parties, or the remarriage of the Defendant. That has been the policy of this state for many years. It is now policy set forth in Act 100 of 1989, without question. There are a number of cases but there is a good case dealing with this matter of intention of the parties, which I will refer you to. It's *McGaugh* v. *McGaugh*, 19 Ark. App. 348, 721 S.W.2d 677 (1986), which deals with the matter of termination of alimony, in particular, and the intention of the parties. I cannot find that there was an intention in this case to do otherwise on their part — other than what was done, and I can tell you that it never was the intention of this Court to do other than to fix the alimony and support as an Order of the Court, rather than any separate agreement of the parties. That was not intended and was not offered in that way, and it certainly was not the finding and decision of this Court, then or now. The Plaintiff's Motion to Terminate Alimony will be granted.

The ex-wife argues that the case of *Linehan* v. *Linehan*, 8 Ark. App. 177, 649 S.W.2d 837 (1983), mandates reversal of the chancellor's ruling. We think not. The Court of Appeals in that case expressly stated:

[T]he $5,000.00 alimony provided for in the agreement was a gross sum and was not to bear interest. In all likelihood, the chancellor would have quickly disallowed this award had he not considered it to be a part of the independent contract. The award of alimony in gross would have been in contravention of a long line of cases prohibiting such awards. *Stout* v. *Stout*, 4 Ark. App. 266, 630 S.W.2d 53 (1982), *Beasley* v. *Beasley*, 247 Ark. 338, 445 S.W.2d 500 (1969).

The ex-wife appellant similarly contends that the case of *Kunz* v. *Jarnigan*, 25 Ark. App. 221, 756 S.W.2d 913 (1988), mandates reversal of the chancellor's ruling in the case at bar. This argument is also without merit as that case is clearly distinguishable. In that case, on the day set for hearing the divorce, the attorneys dictated a settlement agreement into the record. That agreement provided, in part, that the husband, a military retiree, would pay one-half of his retirement benefits to the wife as alimony. The agreement was later incorporated into the decree of divorce. Subsequently, the ex-wife filed a petition in which she sought to modify the decree to provide that her one-half of the retirement benefits were marital property rather than alimony. The chancellor refused to modify the decree. He stated that it was the "parties' intent" that the amount be considered as alimony and that there was no "fraud or overreaching." He further stated that he "doubted" he could modify the agreement. The Court of Appeals affirmed that finding because (1) the "stipulation was a complete settlement" of the parties' property rights and (2) "even if the stipulation was subject to modification" the chancellor was correct in interpreting the parties' intent.

It is not necessary for us to address the other assignments of error.

Affirmed.

GLAZE, J., concurs, *see Linehan* v. *Linehan*, 8 Ark. App. 177, 181, 649 S.W.2d 837, 839 (1983) (GLAZE, J., dissenting).