Pascal T. LAW *v.* Patricia Rich LAW

5-5257                                              455 S. W. 2d 854

Opinion delivered June 1, 1970
[Rehearing denied June 29, 1970.]

*Arnold, Hamilton & Streetman,* for appellant.

*Lester Dole,* for appellee.

CONLEY BYRD, Justice. The sole issue on this appeal is whether a recited agreement in a divorce decree with reference to alimony is subject to modification. Upon a petition for modification and a petition for contempt, the trial court held that the agreement was an independent contract entered into by the parties not subject to modification, but found that it would be inequitable for the court to hold the defendant in contempt for failure to comply with the contract entered into because of failure to pay the arrearages.

The matter comes here on a partial record, Ark. Stat. Ann. § 27-2127.6 (Repl. 1962), containing only the original pleadings and the decree, together with the petitions for modification and the order of the court as above outlined. The original decree, after awarding custody of the eldest son to appellant Pascal T. Law and the three other children to appellee Patricia Rich Law, dismissed appellant's cross-complaint and awarded appellee a divorce upon her complaint. The decree further recites:

"THE COURT FURTHER FINDS that the parties have reached an agreement for the settlement of their property rights and for support, maintenance and alimony which is fair and equitable as between the parties and which should be approved. The terms of such agreement and settlement are as follows:

1. The residence of Plaintiff and Defendant is presently held by them as tenants by entirety. The parties have agreed that the Defendant will convey his interest in such property to the Plaintiff.

2. The Defendant shall pay to the Plaintiff the sum of $550.00 per month for support and maintenance of said children and as alimony to the

Plaintiff, such sum being allocated as follows:

A. As alimony for Plaintiff, $250.00 per month.

B. For the support and maintenance of Donna Law, Jennifer Law, and Jefrey Law, $100.00 per month for each.

C. The Plaintiff has agreed that out of such sum to be paid by the Defendant, she will make the payments on the mortgage indebtedness on the residence; make the remaining payments on a 1964 Buick Special automobile, which automobile is awarded to the Plaintiff; and that she will make the remaining payments due on the purchase price of a piano.

3. The 1964 Buick Special, presently in the possession of the Plaintiff, is awarded to her, together with the household goods, furniture, and equipment in the residence.

4. The Plaintiff is awarded the right to continue to reside in the residence presently occupied by her.

5. Support and maintenance payments for each of the three children hereinabove named, in the custody of Plaintiff, shall be continued so long as such child shall be in school or college attendance. At the end of such time, the $100.00 per month support and maintenance payment allocated to such child shall be eliminated from the payments made hereunder to the Plaintiff, and the sum of $50.00 per month shall be added to the alimony payment due Plaintiff."

By Ark. Stat. Ann. § 34-1211 (Repl. 1962), it is provided that when a decree shall be entered, the court shall make such order touching the alimony of the wife and the care of the children, if there be any, as from the circumstances of the parties and the nature of the case shall be reasonable. Section 34-1213 author-

izes the court upon application of either party to make such alterations from time to time as to the allowance of alimony and maintenance as may be proper. Section 34-1214 directs that in every final judgment for divorce the court shall make an order with reference to a division of property.

Our cases, *McCue* v. *McCue,* 210 Ark. 826, 197 S. W. 2d 938 (1946); *Seaton* v. *Seaton,* 221 Ark. 778, 255 S. W. 2d 954 (1953); and *Lively* v. *Lively,* 222 Ark. 501, 261 S. W. 2d 409 (1953), recognize that the parties do not always leave to the court the determination of the property rights upon proof but that they often reach an agreement with reference thereto. These same cases recognize that some of the contracts with reference to alimony amount to an independent contract or agreement between the parties that is not subject to modification by the court and that other such agreements amount to nothing more nor less than an agreement as to what the court should put in its decree to avoid the taking of proof. The matter was stated in *Lively* v. *Lively, supra,* as follows:

". . . Our cases hold that where a decree for alimony or support is based on an independent contract between parties which is incorporated in the decree and approved by the court as an independent contract, it does not merge into the court's award and is not subject to modification except by consent of the parties. *Pryor* v. *Pryor,* 88 Ark. 302, 114 S. W. 700, 129 Am. St. Rep. 102; *McCue* v. *McCue,* 210 Ark. 826, 197 S. W. 2d 938; *Bachus* v. *Bachus,* 216 Ark. 802, 227 S. W. 2d 439. Although a court of equity may decline to enforce payments due under an independent agreement by contempt proceedings where changed circumstances render such payments inequitable, the wife retains her remedy at law on the contract. *Pryor* v. *Pryor, supra.*

There is a second type of agreement in which the

parties merely agree upon the amount the court should fix by its decree as alimony or support, without intending to confer on the wife an independent cause of action. This type agreement becomes merged in the decree and loses its contractual nature so that the court may modify the decree. *Holmes* v. *Holmes,* 186 Ark. 251, 53 S. W. 2d 226; *Wilson* v. *Wilson,* 186 Ark. 415, 53 S. W. 2d 990; *Seaton* v. *Seaton,* 221 Ark. 778, 255 S. W. 2d 954."

Appellee, to sustain the holding of the trial court that the agreement involved here is an independent agreement not subject to modification, relies upon *McCue* v. *McCue, supra,* and argues that Mr. Law here was so anxious to marry his present spouse that he met with the respective attorneys and entered into the alleged independent agreement.

We are unable to agree with appellee because in the first place there is nothing in the record to show the facts which she argues. Furthermore, since the appellee was relying upon an independent contract the burden of proving the existence thereof was upon appellee, 17A C. J. S. *Contracts* § 579.

So far as the record here shows the only agreement reached by the parties is the recitals in the decree— *i. e.,* the agreement was not otherwise reduced to writing. We can find nothing in the decree to indicate that the agreement reached was intended to be anything other than a stipulation as to the amount the court should fix for alimony. If the parties had intended otherwise, it would have been a simple matter to have so stated as was done in *Armstrong* v. *Armstrong,* 248 Ark. 835, 454 S. W. 2d 660, handed down this date.

Reversed and remanded.

JOHN A. FOGLEMAN, Justice, dissenting. Applica-

tions made of easily stated rules relating to the subject matter before this court in this case and in ' *Armstrong* v. *Armstrong,* 248 Ark. 835, 454 S. W. 2d 660, have done little to minimize the apparent conflicts in our decisions which the court, speaking through the late Chief Justice Griffin Smith, found so greatly in need of harmonizing.[1] I have a feeling that the decisions in these two cases do less to allay the confusion than they do to intensify it.

The cardinal point in making the distinction between the two types of agreement discussed in the majority opinion is the effect of the particular agreement either to retain an independent cause of action on the contract or to merge the agreement into the court's decree to the extent that it loses its contractual nature. See *Lively* v. *Lively,* 222 Ark. 501, 261 S. W. 2d 409. The fact that the contract is oral is of no real significance and language that independent contracts are usually in writing in our opinions is merely a recognition of custom. An attempt to adopt a judicial "statute of frauds" cannot be gathered from them.

I am unable to distinguish this case from *McCue* v. *McCue,* 210 Ark. 826, 197 S. W. 2d 938. There the decree recited:

> "* * * it appearing to the Court by agreement upon the part of the plaintiff and the defendant that a property settlement has been made, * * * it is ordered that $25 per week be made to Lida B. McCue as permanent alimony * * * This decree is based upon property settlement and is a consent decree."

Here the decree states:

> THE COURT FURTHER FINDS that the parties have reached an agreement for the settlement of their property rights and for support, maintenance

---

[1] See *McCue* v. *McCue,* hereinafter cited.

and alimony which is fair and equitable as between the parties and which should be approved.

Here, as there, there was no real contest, the divorce having been granted on the "testimony" of appellant and her mother's corroboration. In treating the significance of the word consent in the *McCue* decree, we said:

To what could "consent" refer except that McCue and his wife had agreed upon what the husband would pay, how it should be paid, and over what period of time? The two could not have the divorce granted in consequence of mutuality, because of statutory inhibition and public policy.

I submit that there is a stronger case here for the independent contract found to exist by the chancellor than there was in *McCue*. There the decree for alimony was, in its own words, a "consent decree." No such language appears in the decree before the court. The court in this case merely approved the agreement by which it could not have been bound. See *McCue* v. *McCue, supra.* There the decree recited: "* * * it is ordered that $25 per week be made to Lida B. McCue as permanent alimony." Here, there is a total absence of any language directing the payment of alimony or indicating that the parties relied upon the powers of the court for enforcement. Even those words too often mistakenly treated as having occult effect in this regard —"which agreement is hereby incorporated ·in this decree"—are significantly missing.

While the transcript does not include the testimony of witnesses and evidence submitted (as recited in the court's decree) we should not presume that it does not support the court's findings in this respect.

Our language in the *McCue* opinion is just as appropriate here as it was there:

We think the decree reflects this situation: The

Chancellor required the minimum proof necessary under divorce laws, and in granting the decree exercised appropriate discretion. But in dealing with property rights it appears that the parties themselves, and their attorneys, reached an understanding. The Court had nothing to do with the method by which that result was arrived at. The suggested provisions could have been rejected; but that was not the Court's purpose of policy nor was it the desire of Dr. McCue. If he and his wife were satisfied, evidence affecting ability to pay was unnecessary; and their agreement became a part of the decree. As to that phase of the litigation the Court relied upon representations. To say that the commitment on Dr. McCue's part to pay permanent alimony of $25 per week was not his contract, but was due to the Court's exercise of judicial discretion, would be to warp words and conduct to suit an undisclosed plan—the plan of a husband who told his attorney to proceed with the hearing, procure immediate results, but to stand by for a relief call when the occasion seemed inviting.

That part of the decree modifying the former allowance is reversed, with directions that all delinquent payments be made.

It seems that the Arkansas rule is decidedly a minority rule. See 24 Am. Jur. 2d 787, Divorce and Separation § 670 (1966), Annots., 58 A. L. R. 639 (1929), 109 A. L. R. 1068 (1937), 166 A. L. R. 675 (1947). The general rule is stated at 24 Am. Jur. 2d 787:

Although there is some authority to the contrary, it is the almost universal rule that where a court has the general power to modify a decree for alimony, such power is not affected by the fact that such a decree for alimony refers to, or is' based upon, or even incorporates, an agreement ,entered into by the parties to the action.

It seems that we have read an exception into Ark. Stat. Ann. § 34-1213 (Repl. 1962) without justification. The judicial hairsplitting that takes place in applications of our rule, decried by the late Chief Justice Smith in *McCue,* demonstrates the fallacy of our position. It is high time that this state take appropriate legislative or judicial action to eliminate this confusion prospectively by allowing modification of any allowance of true alimony, regardless of its basis.

It is superfluous to add that I would affirm the decree.