Virginia Sue BRACKEN v. Virgil BRACKEN

89-265                                     787 S.W.2d 678

Supreme Court of Arkansas
Opinion delivered April 23, 1990
[Rehearing denied May 29, 1990.*]

*Hays and Price, JJ., would grant rehearing.

104

*Douglas, Hewett & Shock*, by: *Mark Hewett*; and *Patten & Brown*, by: *Charles A. Brown*, for appellant.

*Jones, Gilbreath, Jackson & Moll*, by: *Mark Moll*, for appellee.

ROBERT H. DUDLEY, Justice. The parties to this action were divorced in 1974 and, at that time, the appellant, wife, was awarded alimony of $700.00 per month. Fourteen years later, in 1988, the appellee, ex-husband, filed a petition asking that the amount of alimony be either modified or terminated. The Chancellor ordered that alimony be reduced to $300 per month for six months and then terminated. Appellant appeals. We affirm as we cannot say the Chancellor clearly abused his discretion.

At the time of the divorce the appellee, husband, was fifty-one years old and a partner in a firm of certified public accountants. His average annual income for the five years prior to the divorce amounted to $21,167.00, with his 1973 earnings amounting to $30,000.00 and expenses of $50,000.00. He testified that his marital problems affected his income that particular year.

The appellant, wife, was fifty years old with only a high school education. She had not been employed outside the home during the twenty-five years the parties had been married and had

custody of the parties' thirteen year old daughter.

The appellant, wife, was denied a divorce, but appellee was granted one on his counterclaim. The appellant was awarded one-half of all jointly held property, one-third of all of appellee's separate property, use of the residence, child support, and the aforementioned alimony. The appellee appealed and this court, in an unpublished opinion, affirmed all of the decree except the award of one-third of appellee's separate property to appellant. We reversed that part of the decree because under the then current law, Ark. Stat. Ann. § 34-1214 (Repl. 1962), a wife was entitled to one-third of a husband's separate property only when "the wife [is] granted a divorce against the husband." As previously set out, she was denied a divorce. Secondarily, we said that if he was to pay alimony and child support the title to his separate property ought not be clouded. The unpublished opinion further provided: "While we are of the opinion that the $700.00 per month alimony awarded in this case is certainly liberal, we recognize that alimony and child support may be adjusted from time to time as changes in circumstances may require. . . ."

On November 30, 1987, the then sixty-five year old appellee retired, sold his interest in his accounting partnership, and entered into a non-competition agreement. In June 1988, the child support had ended and appellee filed a petition asking that the amount of alimony be modified or terminated. The law applicable to the petition is well-settled. An award of alimony is always subject to modification, upon application of either party. Ark. Code Ann. § 9-12-1314 (1982). Such modification must be based, however, on a change in the circumstances of the parties. *Boyles* v. *Boyles*, 268 Ark. 120, 594 S.W.2d 17 (1980). The burden of showing such a change in circumstances is always upon the party seeking the change in the amount of alimony. *Boyles, supra; Hurley* v. *Hurley*, 255 Ark. 68, 498 S.W.2d 887 (1973). The primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay. *Harvey* v. *Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988). An award of alimony is in the sound discretion of the chancellor, and we will not reverse such an award unless the chancellor has clearly abused his discretion. *Wilson* v. *Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987); *Harvey, supra.*

The facts proven at the hearing with regard to appellee's ability to pay alimony may be summarized as follows. By 1987, the year appellee retired, his income from the accounting partnership amounted to $130,483.00 according to his Arkansas income tax return. He had an additional $3,287.00 income from investments. Appellant testified that his total income in 1988, the year he filed his petition, dropped to $28,880.00 and that his 1989 total income would amount to only $31,347.00. However, it appears from a de novo review of the record that appellant misspoke about his 1988 and 1989 income. On cross-examination he admitted he would receive $3,200.00 per month in severance pay, and admitted that pay would continue for a total of ten years. That source of income would amount to $38,400.00 per year. In addition, in 1987, he received $900.00 per month in social security payments, or $10,800.00 per year, and received around $1,200.00 per year as his part of a trust. Both of those incomes will continue. He received about $500.00 per month, or $6,000 per year, from an investment retirement account, and almost $200.00 per month from municipal bond interest, or $2,400.00 per year. He drew an unspecified amount of dividends, a minimum of $5,000.00, from a partnership interest in a financial management account in which he had invested $146,163.00. The foregoing amounts to at least $62,600.00 in gross income for each of the years 1988 and 1989. He has other investments which have small returns. He pays approximately $1,200.00 per month or $14,400.00 per year on the $133,772.00 debt he owes for money borrowed to open the financial management account. This leaves net income of around $48,200.00. The Chancellor apparently believed appellee's testimony about his relatively small income and found that appellee's income "has been substantially reduced." As the de novo review of the record demonstrates that finding is clearly erroneous and there is no change in circumstances in appellee's ability to pay alimony. However, the Chancellor was correct in his finding that there was a change in circumstances regarding appellant's need for alimony.

In 1974, at the time of the divorce, the appellant was unskilled, untrained, and unemployed. After the divorce, she used her alimony to obtain an Associate in Arts degree from Westark Community College, a Bachelor of Arts degree from the University of Arkansas, and in 1980, a Masters Degree in Social

Services from California State University. Her grade point at the University of Arkansas was 4.00 and 3.75 at California State. Clearly appellant is highly intelligent, and is now well educated and employable.

In 1980, she went to work at the Fresno [California] Learning Center and earned $850.00 per month. She quit that job and, in 1982, went to work for the California Child Protective Service at an annual pay of $20,400.00. She worked there for thirteen months and also quit that job ostensibly because of required travel at night. However, cross-examination developed that the night travel consisted of one seventy-five mile trip and one thirty mile trip over the thirteen month period. Since that time she has not sought to utilize her education in seeking a job. She testified that she "gave up on it" and now "wanted to wait until this [hearing] was over." Since then she has held only part-time or seasonal jobs, and her wages and other income, excluding alimony, are summarized as follows:

| Year | Wages | Other Income | Total |
|------|-------|--------------|-------|
| 1984 | 313.00 | 10,043.00 | 10,356.00 |
| 1985 | 3,300.00 | 5,340.00 | 8,640.00 |
| 1986 | 11,174.00 | 4,242.00 | 15,416.00 |
| 1987 | 10,457.00 | 2,642.00 | 13,099.00 |

In his finding of facts at the conclusion of the hearing, the Chancellor stated that the alimony ordered in 1974 was to enable the appellant to rehabilitate herself, and that has now occurred. The Chancellor stated that appellant "has received educational training and experience, and is a professional person in her own field." "That's been the result of alimony being paid over these years, and that's one reason why it was ordered, so that you could rehabilitate yourself, and you have. You have done a good job of that." The Chancellor further stated: "Alimony is not awarded as a reward to the receiving spouse, or as a punishment of the spouse against whom it is charged, but for the purpose of rectifying, in so far as reasonably possible, the frequent economic imbalance and the earning power and standard of living of the divorced husband and wife; so that's what really took place in this case."

We cannot say the Chancellor abused his discretion in

holding that there has been a change in appellant's circumstances. Appellant is well educated and is capable of gainful employment. The Chancellor obviously concluded that a person who made a 4.0 grade point average in college and a 3.75 in obtaining a master's degree is capable of far more than part-time or seasonal jobs. Such a conclusion is buttressed by appellant's statement that she had not sought to fully utilize her education since 1985, and she "wanted to wait until this was over" before she sought maximum employment. Under these circumstances we cannot say the Chancellor clearly abused his discretion in terminating alimony and, accordingly, we affirm.

HAYS and PRICE, JJ., dissent.

DALE PRICE, Justice, dissenting. I wholeheartedly agree with the majority that the appellee's income has not been substantially reduced. I can even see a basis for concluding the appellant has not sought employment as fervently as she should. But I think the peculiar facts of this case and a fundamental sense of fairness require reversal.

In the 1974 decree, the chancellor awarded Mrs. Bracken one-third of her husband's separate property. But we reversed that portion of the award. As a result, Mrs. Bracken's ability to better her standard of living and plan for her future was considerably reduced. She had been a housewife for 25 years, but was able to educate herself and obtain some employment. She is now 65 years old. To say that she must "fully utilize her education" at a time when Mr. Bracken is comfortably retiring and has had no change in income is unfair and disregards her 25 year contribution to the marriage.

I respectfully dissent.

HAYS, J., joins the dissent.