

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–13–1078

| | | |
|---|---|---|
| BERT R. JONES, JR. | | **Opinion Delivered** November 5, 2014 |
| | APPELLANT | |
| | | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. DR–12–1532] |
| V. | | |
| SONJA D. JONES | | HONORABLE JOANNA TAYLOR, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**DAVID M. GLOVER, Judge**

The issues in this appeal concern the amount of alimony the Washington County Circuit Court ordered appellant Bert R. Jones, Jr., to pay his ex-wife, appellee Sonja Jones. We affirm the circuit court's decision.

Bert and Sonja were divorced by decree entered on July 2, 2013.[1] Bert was not present at the divorce hearing. Thus, at the time the decree was entered, the circuit court ordered Bert to pay temporary child support to Sonja in the amount of $1129 per month for three children and took the issues of permanent child support and alimony under advisement (because Bert had failed to provide information concerning his income, and the circuit court did not have sufficient information at that time to make rulings on those issues).

A subsequent hearing for the purpose of determining final child support and alimony

---

[1]The divorce hearing was held on April 26, 2013.

SLIP OPINION

was held on July 3, 2013. In an order filed August 13, 2013, the circuit court found that Bert's monthly income for child-support purposes was $5,461, and his monthly child-support obligation for two children (the parties' son had turned eighteen and graduated from high school since the last hearing) was set at $1,080 per month. The order stated that when the parties' second child turned eighteen or graduated from high school, child support would be reduced to $787.81, and child support would cease when the last child turned eighteen or graduated from high school.

The trial court also addressed the issue of alimony in the order, reciting the proper factors to be considered when making such an award. The trial court found that Bert's monthly net income was $5,461, while Sonja, who was a high-school graduate, making $13 per hour, had a monthly net income of $1,690. Sonja's job was found by the circuit court to be the highest and best use of her talents and resources at the time. The circuit court noted that the parties had been married for eighteen years and were both healthy, but had no savings or real property, and that Sonja's $1,690 monthly income would not support her monthly expenses of $3,388, even with the additional $1,080 per month she would receive in child support. The circuit court found that, after child support, Bert had a disposable income of $4,381 per month, and after deducting his monthly expenses of $2,433, he had an ability to pay $1,948. Bert was ordered to pay Sonja alimony of $618 per month until the parties' older daughter turned eighteen or graduated from high school; at that time, when the child support decreased, Sonja's alimony would increase to $910.19 per month. Finally, when the parties' younger daughter turned eighteen or graduated from high school and child support

2



terminated, the circuit court ordered Sonja's alimony to increase to $1,698 per month until Sonja remarries, dies, or the amount of alimony is modified by the trial court.

Bert appeals the trial court's order concerning the issue of alimony. He first argues that the trial court erred in entering an order increasing his alimony obligation proportionally each time his child support abates. He further argues that the trial court erred in ordering him to pay Sonja alimony for a punitive purpose. We affirm the circuit court's decision.

*Automatic Increase in Alimony Each Time Child Support Abates*

The circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Smithson v. Smithson*, 2014 Ark. App. 340, 436 S.W.3d 491. The primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay. *Bracken v. Bracken*, 302 Ark. 103, 787 S.W.2d 678 (1990). An award of alimony is in the sound discretion of the trial court and will not be reversed unless there is an abuse of that discretion. *Id.* The purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties to a divorce in light of the particular facts of each case. *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988). In *Boyles v. Boyles*, 268 Ark. 120, 124, 594 S.W.2d 17, 20 (1980), our supreme court held that the courts consider many factors in arriving at an amount of alimony, among them the financial circumstances of both parties; the financial needs and obligations of both; the couple's past standard of living; the value of jointly owned property; the amount and nature of the income, both current and anticipated, of both husband and wife; the extent and nature of the resources and assets of each of the parties; the amount of income of each

that is "spendable," the amounts which, after entry of the decree, will be available to each of the partes for the payment of living expenses; the earning ability and capacity of both husband and wife; property awarded or given to one of the parties, either by the court or the other party; the disposition made of the homestead or jointly owned property; the condition of health and medical needs of both husband and wife; the relative fault of the parties and their conduct, both before and after separation, in relation to the marital status, to each other and to the property of one or the other or both; the duration of the marriage; and even the amount of child support awarded. The need for flexibility outweighs the need for relative certainty in determining an award of alimony, but if alimony is awarded, it should be an amount that is reasonable under the given circumstances. *Smithson*, *supra*.

Bert argues that, given the purpose of child support, it follows as a matter of logic and common sense that when a non-custodial parent's children reach the age of majority, the non-custodial parent's financial responsibilities to the other parent should be diminished. We disagree with this bright-line assessment; each case is unique and must be assessed on its own merits. In the instant case, we cannot say that the circuit court's decision was clearly erroneous.

The amount of child support received is one factor to be considered when determining the amount of alimony to be awarded. Sonja was receiving child support for two children when alimony was awarded, and the circuit court correctly took that amount into consideration when making the alimony award. The circuit court also noted that Sonja was using her high-school education to the best of her ability in a $13 per hour job, and that salary

4

alone would not meet all of her monthly expenses, a finding Bert does not dispute. It is a fact that the child support would be reduced as each child attained the age of majority, and that Sonja would have less money to use to cover her monthly expenses when this occurred. Instead of setting alimony at a higher level initially, the circuit court took into consideration that child support could be used for some of those expenses while Sonja was receiving it, but finding that she would continue to need additional resources to meet her monthly expenses after child support decreased and then terminated.

We note that modification of an award of alimony must be based on a change of the parties' circumstances, and the burden of showing a change in circumstances is always on the party seeking the change in the amount of alimony. *Weeks v. Wilson*, 95 Ark. App. 88, 234 S.W.3d 333 (2006). Bert argues that the trial court improperly presumed a change of circumstances in ordering an incremental increase in alimony as child support decreased, thereby circumventing the requirement that Sonja be required to file a motion to increase her alimony each time child support decreases and come to court and put on her proof. However, here there was evidence that Sonja could not meet her monthly obligations on her salary without the additional assistance from child support and alimony, and that as child support decreased and Sonja lost that source of income, she would need an increase in alimony to help cover expenses that she had previously had to use child support to help cover. On this point, if Bert's circumstances change, and he no longer has the ability to pay the ordered level of alimony, he, too, may petition the circuit court for a reduction.

*Award of Alimony for Punitive Purposes*

Bert also argues that the circuit court's award of alimony to Sonja was punitive in nature and should be reversed. He contends that the trial court gave no rationale for its alimony award, but that the record was replete with evidence of domestic violence between the parties, and therefore, because the trial court failed to give a non-punitive rationale for the alimony award, it was punitive and must be reversed. We disagree.

There is no indication that the alimony award was meant to punish Bert. In fact, Bert concedes in his brief that many of the factors to be considered in determining whether to award alimony weigh in favor of Sonja being awarded some measure of alimony. Bert made substantially more money than Sonja, and Sonja's monthly expenses exceeded her income. The award of alimony is based primarily on the need of one spouse and the ability of the other spouse to pay. *Bracken*, *supra*. It was not an abuse of discretion for the circuit court to award Sonja alimony based on the parties' particular circumstances.

Affirmed.

VAUGHT and WOOD, JJ., agree.

*Gregory Klebanoff*, for appellant.

*Rhoads Law Firm*, by: *Johnnie Emberton Rhoads*, for appellee.