

Cite as 2017 Ark. App. 429

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-16-1054

| | |
|---|---|
| | Opinion Delivered: SEPTEMBER 6, 2017 |
| ALLAN DEWAYNE CHAMBERS<br>APPELLANT | APPEAL FROM THE YELL COUNTY CIRCUIT COURT, SOUTHERN DISTRICT [NO. 75SDR-15-60] |
| V. | |
| | HONORABLE DAVID H. MCCORMICK, JUDGE |
| AMY MICHELLE CHAMBERS<br>APPELLEE | REVERSED AND REMANDED |

**KENNETH S. HIXSON, Judge**

Appellant Allan Dewayne Chambers (Allan) appeals from an August 2, 2016 divorce decree filed by the Yell County Circuit Court in favor of appellee Amy Michelle Chambers (Amy). On appeal, Allan contends that (1) the circuit court erred when it determined that the award of temporary alimony could not be modified because of his change in employment circumstances, (2) the circuit court's division of what little marital property the parties owned was disproportionate and not supported by the evidence in the record, and (3) the circuit court's award of attorney's fees to Amy was an abuse of discretion and should either be set aside completely or reduced. We reverse and remand.

I. *Facts*

The parties were married on October 10, 2010, and separated on or about June 30, 2015. No children were born of the marriage, and during their marriage, Allan was the primary income earner. Amy filed a complaint and subsequently a first amended complaint

for divorce, and Allan filed answers to the complaints and a counterclaim. In her amended complaint, Amy requested temporary and permanent alimony, an unequal distribution of marital property, and that the court set a hearing for temporary relief pending the final decree. The request for temporary relief included, but was not limited to, temporary support, temporary possession of the "property currently in her possession," and a temporary allocation of marital debts and responsibilities.

A hearing on the temporary matters was held on September 1, 2015. After Amy testified, the court took a recess. During the recess, counsel for the parties conferred and reached a settlement agreement on the temporary issues. When court was called back into session, Amy's counsel advised the circuit court that the parties had reached an agreement. Counsel explained that the parties had agreed on an amount of $700 per month for temporary spousal support and announced their agreement as to temporary possession of the parties' personal property, temporary possession of the residence, and the temporary allocation of certain marital debts. After a discussion between counsel and the court, the circuit court directed that the spousal support should go through the circuit clerk's registry. The circuit court confirmed that counsel would prepare an order and acknowledged that the determinations were only temporary. Additionally, the circuit court instructed counsel to include other routine language in the order. Finally, the circuit court summarized the discussions as follows: "And we'll approve the temporary division of the other property and debts to go with them. And he'll pay temporary spousal support of $700 per month, and, then get it set or settled."



An agreed temporary order was filed, which stated the following:

On this 1st day of September, 2015, the Court finds that the parties agree as follows:

1. PROPERTY: Each party shall have temporary, exclusive possession of the personal property currently in their possession. Specifically, the Wife shall have temporary, exclusive possession of the Toyota Tacoma and camper, and the Husband shall have temporary, exclusive possession of the Chevrolet pickup, four wheeler, boat, and zero turn mower. The Husband shall have temporary, exclusive possession of the parties' real property. Neither party shall dispose of or encumber any property which may be considered to be marital property.

2. DEBTS: Neither party shall incur any new debts for which the other party might be held responsible. The Plaintiff shall be responsible for the monthly payment on her Belk, Kohl's, Goodies, and Maurice's credit cards, her student loans, the bill in her name to the Allergy Clinic, the monthly payment on the Toyota Tacoma, her monthly cell phone payment, and shall hold Defendant harmless therefrom. The Defendant shall be responsible for all of the obligations owed on the parties' real property, including, but not limited to, the monthly mortgage in the approximate amount to $564.00, taxes, insurance, and utilities, and the debt on any property he is receiving hereunder, and shall hold Plaintiff harmless therefrom. The Husband shall maintain all existing insurance policies, including, but not limited to, the insurance on the camper, the Chevrolet pickup, and the life insurance through Southern Farm Bureau. The Husband shall forthwith pay all 2013 and 2014 property taxes as the parties acknowledge that the Plaintiff cannot renew her vehicle registration in September of 2015 while these debts are outstanding. Specifically, the past due taxes for 2013 are approximately $558.12, and the taxes for 2014 are approximately $496.18.

3. SPOUSAL SUPPORT: Beginning September 1, 2015, and on or before the first day of each month thereafter, the Defendant shall pay the sum of $700.00 to Plaintiff for temporary spousal support. The Defendant's September 2015 payment in the amount of $700.00 shall be paid directly to Plaintiff, which Plaintiff acknowledges receipt thereof. Beginning in October 2015, and each month thereafter, all spousal support payments shall be paid through the registry of the Yell County Circuit Clerk. . . . Additionally, the Defendant shall pay any processing fees required by the Clerk.

4. INJUNCTION: Each of the parties shall be enjoined from in any manner harassing, molesting or vilifying the other during the pendency of this cause.

5. AFFIDAVIT OF FINANCIAL MEANS: The parties shall exchange an Affidavit of Financial Means within 60 days of the date of which this Agreed Temporary Order is entered.

Allan paid the $700 spousal-support payment for September. However, Allan failed to make the $700 spousal-support payment due for October, failed to pay the delinquent property taxes as agreed, and removed some personal items from the camper, which was temporarily and exclusively granted to Amy in the agreed order. Accordingly, Amy filed a motion for contempt and for attorney's fees. At the contempt hearing, the circuit court found Allan in contempt for failing to pay his temporary spousal-support payments, failing to pay the 2013 property taxes, and for removing certain items of personal property in violation of the circuit court's previous agreed temporary order. Allan was ordered to pay $1,400 in back spousal-support payments, $558.12 in property taxes, and $300 for attorney's fees and to return the items he took or report to the Yell County Sheriff's office for incarceration. Allan subsequently made the required payments on November 4, 2015.

Shortly thereafter, on November 19, 2015, Allan filed a motion to modify the temporary-support order. He sought to reduce his temporary payments because his income had been significantly reduced. He did not seek to modify any of the other temporary agreements in the order. Amy filed a response arguing that the temporary-support agreement was contractual in nature and nonmodifiable, absent an agreement of the parties. She further argued that Allan had not provided any discovery material showing that his income had been reduced and that the motion was barred by unclean hands. In addition to her response to Allan's motion to reduce temporary-support payments, Amy filed a motion for contempt, alleging that Allan had stopped paying temporary-support payments since December 2015. A final hearing on all pending matters and a trial on the merits was held on July 5, 2016.

At the hearing, Amy testified that she had been primarily a housewife during the marriage and also attended school. She is a sponsored competitive archery shooter. In 2014, she had earned $929 from a competition. Allan had earned $873 from the same competition. After the separation, Amy was employed by Medical Office Systems and earned $10 per hour. She testified that Allan had been employed during their marriage and earned $83,000 in 2010, $94,000 in 2011, $72,000 in 2012, $76,000 in 2013, $82,000 in 2014, and $55,337 in 2015. Amy summarized that Allan owed her $5,600 in arrearages for failing to pay temporary spousal support.[1]

Amy testified that Allan owned the marital residence prior to their marriage. However, she testified that she had invested a lot of time in repairing and improving the residence. She claimed that during the marriage, the principal on the debt encumbering the residence was reduced in the amount of $3,543.85 and that marital money was used to improve the home in the amount of $6,959.53. She requested that the circuit court consider those amounts in the property distribution. Amy also claimed that the camper that she was living in had been purchased during the marriage and was worth between $12,000 and $14,000. Because she could not afford a home, she requested that she be able to keep the camper and suggested that the principal reduction and marital money used to improve Allan's premarital property would offset the value of the camper.

---

[1]The testimony indicated that appellant had failed to pay the $700 per month spousal support for the months of December through July, a period of eight months.

Additionally, Amy testified that the boat and zero-turn riding lawn mower purchased during the marriage were valued at $3,500 and $4,000, respectively. Amy testified that she had learned in discovery that there was a whole-life insurance policy with a cash surrender value of $1,600 on Allan's life. She acknowledged that Allan's Chevrolet pickup truck was premarital and that her Toyota Tacoma was purchased during the marriage. The Toyota still held a debt of $10,000.[2] Amy testified that she owed approximately $26,000 in student loans. She also claimed that her daughter, Casey Brown, had loaned her $6,800 to pay off credit-card debt that was in her name. She had used the credit cards to purchase items for Allan and herself during the marriage. Amy's daughter also testified at the hearing and confirmed the loan.

Allan testified that during the marriage, he was employed with Mayo Tool and that he was a supplier for the oil- and gas-drilling industry. He testified that he had been servicing thirty-five wells, but after the recession, he had been servicing only three wells. His income had been reduced accordingly. Allan testified that he ultimately was laid off on December 15, 2015, and applied for unemployment the following week. Allan testified that he had been unemployed and had been collecting $451 in unemployment benefits since January 2016. However, Allan testified that he had been hired by Superior Masonry a week prior to the hearing and was earning $19 per hour. He was expecting to work 40 hours per week. Therefore, Allan requested that the circuit court modify the temporary-support

---

[2]There was no testimony presented as to the value of the Toyota Tacoma other than the fact that $10,000 was still owed.

payments that had accrued pending the divorce decree because his income had been significantly reduced as of December 15, 2015.

On cross-examination, Allan admitted that he had participated in two unsponsored archery competitions, purchased $60 in iTunes items, spent $109.47 at West Side Liquor, paid almost $200 per month for satellite service, and joined an online dating website all during the periods in which he had failed to make the court-ordered temporary-support payments.

Allan testified that he owned the real property that the parties had moved into after they were married. He explained that the prior renters had damaged the property and that it had been not "much better for firewood whenever we got there." Allan explained that they made a lot of improvements to the home. Allan testified that he had invested $2,700 from a previous home into the improvements. However, he admitted that he did not have a copy of the canceled check.

Regarding the camper that was temporarily awarded to Amy, Allan claimed that he had traded in a camper that he had owned prior to the marriage in addition to the $9,300 he paid with marital funds. However, on cross-examination, Allan admitted that he had failed to disclose the trade-in during discovery and that he had failed to provide any documentary proof.

At the conclusion of the hearing, the circuit court made the following relevant oral findings from the bench:

> The issue of the home improvements, the home debt reduction, I tend to agree, under *Moore v. Moore*, that was active appreciation, increase of a pre-existing asset, and here we're talking about debt reduction. I don't think *Moore* touched on that. I think those cases are still valid. In this case I'm going to offset the camper

against those two items; the home improvements, the home debt reduction, Mrs. Chambers's interest in those will be satisfied by having the camper transferred into her individual name.

As far as spousal support, I know the parties agreed to that on a temporary basis. Looking at all the factors that were present at the time it wasn't something the Court was involved in setting. The parties set it themselves based on the equities that they saw present at the time, and I'm going to leave that in effect through today. So, he owes that arrearage through today. Okay. It's not something I set that I think could be reduced by the petition on change of circumstances.

. . . .

The temporary spousal support, that is used to try to get somebody back on their feet, moving again, get them out of the circumstances they're in. At this point Ms. Chambers has finished her education. She's got a full time job in her field of chosen degree at this point. She may have started for one, but she came back for something else. I'm not going to award any temporary spousal support because I'm leaving the other in place through today anyway.

. . . .

I am going to find and the parties agreed the boat and mower were both marital property. They're to be sold by the clerk on the courthouse steps, and obviously half of those moneys would be awarded to Ms. Chambers and Mr. Chambers. So there's some cash she's going to have in hand if those items sell for anything close to what they're worth.

Also note there was some equity in the life insurance policy, the cash surrender value increase during the marriage, as well, and that plays into the camper award she's getting. She's got a little bit of interest in that cash surrender value there. So, that's not going to be a precise division, but I think it's going to be fairly close in the case to avoid selling all the other items.

. . . .

He gets the life policy. I'm going to say any interest she has in that is satisfied by the award of the camper. . . . Attorney's fees and costs, submit me an itemization within ten days of how much you're seeking.

After the hearing, Amy filed a motion for attorney's fees in the amount of $9,119 to be paid by Allan. She alleged that it was undisputed that Allan was the primary income earner during the marriage and that Allan's new employment paid him almost twice the amount of her earnings. Additionally, Amy noted that Allan had previously been found in contempt. Allan filed a response arguing that the circuit court should deny the motion because her request was unreasonable in light of his recent employment at a significantly lower wage than what he had earned during the marriage and because Amy was now employed.

In its divorce decree filed on August 2, 2016, the circuit court specifically made the following findings:

> 3. Prior to the trial taking place, the parties advised they had reached a partial agreement as it relates to certain items of property. Specifically, Defendant shall have his Chevrolet pickup, his real property . . ., and any other personal property currently located in his possession, unless otherwise described hereinbelow. Specifically, the parties' Monark boat with accompanying motor and trailer, Husqvarna zero turn riding lawn mower, two propane tanks, and fifth wheel trailer hitch which are currently in the Defendant's possession are not the Defendant's property and are described hereinafter. The Plaintiff shall have her Toyota Tacoma, be responsible for the indebtedness owed thereon and hold the Defendant harmless therefrom, the 2007 Wildcat fifth wheel camper trailer, the two propane tanks, the fifth wheel trailer hitch, and any other personal property currently in her possession. Defendant shall immediately return the two propane tanks and fifth wheel trailer hitch to the Plaintiff or her attorney . . . .
>
> 4. The parties' Monark boat, with accompanying motor and trailer, along with the parties' Husqvarna zero turn riding lawn mower shall be sold at public auction to the highest bidder, with the Clerk of this Court being appointed commissioner. Said sale shall take place within 45 days of entry of this Decree of Divorce. The Defendant is ordered and directed to timely deliver to the Clerk of this Court the parties' Monark boat, with accompanying motor and trailer, and Husqvarna zero turn riding lawn mower so that said sale shall timely take place. At the conclusion of the sale, following costs of the sale, the proceeds shall be placed in the registry of the Court. The proceeds are to be equally divided, subject to the Plaintiff's judgment against the Defendant in the amount of $5,600. Plaintiff shall be

entitled to receive her ½ of the proceeds outright. The Defendant's ½ of the proceeds shall first be allocated to the Plaintiff's judgment in the amount of $5,600.00 more fully described hereinbelow. In the event Defendant's ½ of the sale proceeds exceeds the sum of $5,600.00, Defendant shall be entitled to receive any amount of the proceeds exceeding $5,600.00. In the event Defendant's share of the sale proceeds does not exceed the sum of $5,600.00, Plaintiff shall be entitled to 100% of the Defendant's sale proceeds, and Plaintiff shall have a deficiency judgment for any amount which does not satisfy her $5,600.00 judgment.

5. The Court finds that Defendant is in arrears in his temporary spousal support obligation he agreed to pay per the terms of this Court's Agreed Temporary Order and Plaintiff is hereby awarded judgment in the amount of $5,600 against Defendant, with 10% interest per annum, for all of which execution and garnishment may issue. Defendant shall prepare a schedule, verified by affidavit, of all his property, both real and personal, including moneys, bank accounts, rights, credits, and choses in action held by himself or other orders for him and specify the particular property which he claims as exempt under the provisions of the law. The schedule shall be filed with the Clerk of this Court and provided to counsel for Plaintiff within forty-five (45) days of the date of this Decree.

6. Defendant shall be the owner of the life insurance policy in his name through Farm Bureau.

7. The Plaintiff's request for rehabilitative alimony is hereby denied.

8. The Court finds that the case of *Moore v. Moore*, 2016 Ark. 105 is not applicable to this case. The Court notes that it has considered its division of property described hereinabove in denying the Plaintiff's request for rehabilitative alimony.

9. Plaintiff is awarded a reasonable attorney's fee and costs in the amount of $5,336.18, said amount being a judgment against Defendant, for all of which execution and garnishment may issue.

10. Each of the parties shall be permanently enjoined from in any manner harassing, molesting, or vilifying the other.

11. Any relief requested by either party not specifically granted by the terms of this Decree of Divorce is denied and dismissed with prejudice.

12. This Court retains jurisdiction of this case for such further Orders as may be proper for the enforcement of this Decree of Divorce.

13. This shall constitute a final Order.



This appeal followed.

## II.  *Modification of Temporary Support*

On appeal, this court reviews divorce cases de novo on the record.  *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007).  Moreover, we will not reverse a circuit court's finding of fact in a divorce case unless it is clearly erroneous.  *Id.*  Findings of fact made by the circuit court in a divorce case will be reviewed by this court in the light most favorable to the appellee, and we will defer to the superior position of the circuit court to judge the credibility of witnesses.  *Id.*

Allan first argues that the circuit court erred when it determined that the award of temporary alimony could not be modified based on his change in employment circumstances, and we agree.  "An award of alimony is always subject to modification, upon application of either party."  *Bracken v. Bracken*, 302 Ark. 103, 105, 787 S.W.2d 678, 679 (1990); *see also* Ark. Code Ann. § 9-12-314 (Repl. 2015).  Such modification must be based, however, on a change in the circumstances of the parties.  *Boyles v. Boyles*, 268 Ark. 120, 594 S.W.2d 17 (1980).  The burden of showing such a change in circumstances is always on the party seeking the change in the amount of alimony.  *Id.*  The primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay.  *Bracken*, *supra*.  An award of alimony is in the sound discretion of the circuit court, and we will not reverse such an award unless the circuit court has clearly abused its discretion.  *Id.*

However, our caselaw has recognized that some agreements referencing alimony amount to an independent contract or agreement between the parties that is not subject to

modification by the court and that other such agreements amount to nothing more nor less than an agreement as to what the court should put in its decree to avoid the taking of proof. *Law v. Law*, 248 Ark. 894, 455 S.W.2d 854 (1970). In *Lively v. Lively*, our supreme court explained that

> [o]ur cases hold that where a decree for alimony or support is based on an independent contract between parties which is incorporated in the decree and approved by the court as an independent contract, it does not merge into the court's award and is not subject to modification except by consent of the parties. . . .
>
> There is a second type of agreement in which the parties merely agree upon the amount the court should fix by its decree as alimony or support, without intending to confer on the wife an independent cause of action. This type agreement becomes merged in the decree and loses its contractual nature so that the court may modify the decree.

*Lively v. Lively*, 222 Ark. 501, 502–03, 261 S.W.2d 409, 410 (1953) (citations omitted).

Allan argues that his agreement to pay Amy $700 per month was nothing more than an agreement as to what the circuit court should put in its temporary order to avoid the taking of proof and that this agreement was merged into the temporary-support agreement and is therefore modifiable by a change in circumstances. Allan cites to *Bracken*, *supra*; *Lively*, *supra*; and *Law*, *supra*, as support for his argument.

On the other hand, Amy argues that Allan's agreement to pay her the sum of $700 per month constituted an independent contract that was not modifiable. For support, she cites *Jordan v. Jordan*, 2017 Ark. App. 13, 510 S.W.3d 807. However, *Jordan* is distinguishable from the circumstances of this case. Unlike here, *Jordan* did not involve a temporary agreement. Rather, in *Jordan*, the agreement provided that Mr. Jordan was to pay alimony until the death of either party or when Ms. Jordan reached the age of sixty-two and a half. *Id.* It further provided that alimony would terminate if Ms. Jordan remarried

or cohabitated with a member of the opposite sex. *Id.* The parties in *Jordan* announced in open court at the trial on the merits that they had reached a settlement agreement setting alimony, and the agreement that was read in open court was specifically incorporated by reference into the agreed divorce decree. *Id.* Both parties acknowledged that the agreement had settled all issues and that each understood all the terms of the agreement. *Id.* After Ms. Jordan subsequently filed a petition for modification of the alimony established in the agreed divorce decree, the circuit court dismissed the petition. *Id.* We affirmed, holding that the circuit court properly held that the property-settlement agreement was an independent contract that was incorporated into the divorce decree and therefore not modifiable. *Id.* Specifically, we held that

> the parties' settlement of property issues is more clearly a negotiated settlement of issues—set forth in a designated "property-settlement agreement" that the parties intended to be binding—than a mere agreement to stipulate to some issues to avoid putting on proof.

*Id.* at 5, 510 S.W.3d at 811.

Unlike *Jordan*, the parties here simply announced in open court at a temporary hearing after Amy testified that they had reached an agreement as to the amount of temporary support, the temporary possession of their property, and the temporary apportionment of various marital debts. The circuit court discussed the stipulations in open court with counsel and ordered that additional terms and language be included in an order that Amy's counsel would prepare. Furthermore, the "Agreed Temporary Order" states that "the Court finds that the parties agree as follows," but it does not incorporate a separate agreement as the order did in *Jordan*.

13

The circumstances of the agreement here are more akin to those in *Law*. In *Law*, our supreme court in the majority opinion stated that the burden was on the party seeking to rely on an independent contract to prove the existence of that independent contract. *Law, supra*. Our supreme court then explained the following:

> So far as the record here shows the only agreement reached by the parties is the recitals in the decree—i.e., the agreement was not otherwise reduced to writing. We can find nothing in the decree to indicate that the agreement reached was intended to be anything other than a stipulation as to the amount the court should fix for alimony. If the parties had intended otherwise, it would have been a simple matter to have so stated[.]

*Law*, 248 Ark. at 898, 455 S.W.2d at 856–57. Just as in *Law*, our record does not indicate that the parties intended their agreement to be an independent contract. Instead, the parties merely had an agreement to stipulate to some issues on a temporary basis to avoid putting on proof until the final hearing. Therefore, we hold that the temporary-support agreement is not an independent contract and can be modified by the circuit court on an appropriate change in circumstances to be determined by the circuit court. Thus, we reverse and remand for further proceedings consistent with this opinion.

III. *Division of Marital Property*

Allan additionally argues that the circuit court disproportionately divided the parties' property without reciting any basis for why an unequal distribution was proper. Property division and alimony are complementary devices that the circuit court may utilize in combination to make the dissolution of marriage equitable. *Moore v. Moore*, 2016 Ark. 105, 486 S.W.3d 766. In accordance with Arkansas Code Annotated section 9-12-315(a)(1) (Repl. 2015), at the time of entry of a divorce decree, the circuit court shall equally distribute all marital property one-half to each party unless it is determined that such a

distribution would be inequitable; if the property is not divided equally, then the circuit court must state the reasons and bases for not doing so, and the bases and reasons should be recited in the order entered in the matter. *Brown v. Brown*, 2016 Ark. App. 172. Factors to be considered by the circuit court in the event that the marital property is not divided equally include the length of the marriage; the age, health, and station in life of the parties; the occupation of the parties; the amount and sources of income available to each party; vocational skills; employability; the estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; contribution of each party in acquisition, preservation, or appreciation of marital property, including homemaker services; and the federal income tax consequences of the court's division of property. Ark. Code Ann. § 9-12-315(a)(1)(A). Additionally, we have held that a nonowning spouse is entitled to some benefit when marital funds have been expended to reduce the debt on the other spouse's nonmarital property. *Wilson v. Wilson*, 2016 Ark. App. 256, 492 S.W.3d 534. However, that reduction in debt on nonmarital property is not considered to be marital property to be divided equally; instead, the nonowning spouse is simply entitled to have the marital contribution considered in balancing the equities involved in the property division. *Id*.

While the circuit court made some oral findings regarding its distribution of marital property at the conclusion of the final hearing, those findings were not memorialized in the divorce decree. The circuit court did not specify in its order whether all the assets were marital property or nonmarital property; nor did it state its reasons for every unequal division of marital property or any distribution of nonmarital property to the nonowning spouse.

Because the divorce decree does not set forth the circuit court's reasoning for the unequal division of marital property, this case must be remanded for the circuit court to enter an order that satisfies the requirements of Arkansas Code Annotated section 9-12-315. *See Brown, supra.* We express no opinion as to whether the circuit court's distribution would have been proper had the circuit court memorialized its oral findings.

## IV. *Attorney's Fees*

We acknowledge that the award of attorney's fees in a domestic-relations case is a matter within the circuit court's discretion, and there is no fixed formula for determining what constitutes a reasonable amount. *Webb v. Webb*, 2014 Ark. App. 697, 450 S.W.3d 265. The circuit court has the inherent power to award attorney's fees, and whether the court should indeed award any attorney's fees rests within its sound discretion. *Id.* In determining whether to award fees, the circuit court is to consider the relative financial abilities of the parties. *Halk v. Halk*, 2009 Ark. App. 803; *Delacey v. Delacey*, 85 Ark. App. 419, 155 S.W.3d 701 (2004). Because the circuit court presides over the case and gains familiarity with it as well as the extent and quality of the services rendered by the attorney, it has a superior opportunity to assess the critical factors, and an award of attorney's fees will therefore not be set aside absent an abuse of discretion. *Webb, supra.*

Allan finally argues that the circuit court abused its discretion in awarding attorney's fees because the "equities of this case suggest that both parties should have paid their own fees." Alternatively, he requests that the award be reduced. However, because we reverse and remand the temporary-support and property-division issues for the reasons outlined

above, we also reverse and remand the circuit court's attorney's-fee award to allow the court to reconsider the fee award on remand in light of those holdings.

Reversed and remanded.

GLOVER and WHITEAKER, JJ., agree.

*Brian K. Mueller*, for appellant.

*The Streett Law Firm, P.A.*, by: *James A. Streett* and *Robert M. Veach*, for appellee.